457 P.2d 745

**Charles A. JOWDY and Shirley R. Jowdy, his wife, Appellants,**

**v.**

**Alma P. GUERIN, also known as Alma Miller, a widow, Appellee.**

**No. I CA–CIV 599.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 11, 1969.

Rehearing Denied Sept. 29, 1969.

Review Denied Oct. 28, 1969.

McKesson, Renaud, Cook, Miller & Cordova, by J. Gordon Cook and Val A. Cordova, Phoenix, for appellants.

Gibbons, Kinney, Tipton & Warner, by Howard W. Gibbons, Phoenix, for appellee.

DONOFRIO, Presiding Judge.

This is an appeal by the defendants, Mr. and Mrs. Charles A. Jowdy, (appellants) from a judgment entered against them in favor of the plaintiff, Alma Guerin, (appellee) in an action for waste on real property located near Wittman, Arizona.

To be determined is whether an action in waste lies under the facts of this case. Then, if an action in waste lies, whether the evidence as to damages is sufficient to support the judgment.

Before going into the issues we believe a brief statement of the pertinent facts should be stated. Briefly, the facts are: Mr. and Mrs. Guldner, who were codefendants in the trial court, but who are not parties to this appeal, in April 1959 purchased an interest in the Wittman property upon which there was a residence. Although the type of instrument conveying the interest was not introduced in evidence, it was undisputed that the Guldners as purchasers owed money on the property. On August 14, 1959, the appellee, hereafter referred to as plaintiff, purchased the vendor's interest in this property from Lane Title & Trust Company for $2184.00. The transfer was made by special warranty deed conveying the property to plaintiff subject to the agreement with the Guldners. The main basis for the action in waste was the destruction of the residential improvements on the property.

At the trial plaintiff testified that she visited the property when she purchased the interest, but that she did not go inside the residence because the Guldners were living in it and Mr. Guldner was ill. Plaintiff described the property as "just a cute little cottage". She described it as being constructed of "stucco" and stated that it appeared from the outside to be "well maintained—I mean it was just a nice little home for a family". She said she had no opinion as to the value at that time as she wasn't familiar with the area at all.

On August 9, 1961, the defendants Jowdy as seller, and the Guldners as buyer, entered into escrow instructions with Lane Title & Trust wherein the Guldners purchased some apartments from the Jowdys for $29,000. The instructions provided that $4000.00 of the purchase price would be "represented by trade of equity in Mobile Town and Wittman direct and outside of escrow". The Mobile Town property was an unimproved

lot and the Wittman property was the property involved in the instant case. On August 10, 1961, the Guldners transferred their interest by warranty deed to the defendants Jowdy. The deed stated that the Wittman property was conveyed subject to the agreement of sale. Mr. Jowdy testified that he visited the property once just prior to trading for it when the Guldners were still living in it, and once just after, when the Guldners had moved out. He described the property as being in substantially the same condition both times—a fenced yard with a small two-bedroom house which had been burned in the back and partitioned off with some sort of wallboard. He stated that at the time he felt the property was worth about $2,500.00; that he advertised and tried to sell it for that amount, but was unsuccessful. There was no evidence presented of an agreement by Jowdy to pay the Guldners payments on the property, but Mr. Jowdy testified that he made payments of $35.00 per month until May or December of 1962 when he decided to quit making payments because he could not sell the property.

At the time the Jowdys purchased the Guldners' interest there was $2,230.88 owing, and at the time they ceased making payments there was a balance of $1,980.27 remaining. This balance is the same as the amount of the judgment. The only other evidence as to the value of the property was a fire insurance policy which had been taken out in December 1959 for $2,500.00.

Mr. Jim Perry, who was in the construction business, testified that he accompanied Mr. Jowdy on both his visits to the property and described the improvements as follows:

"Well, this house and the whole street were just junk houses. This particular one was an army barracks that had been moved in * * * as best I remember it's half an army barracks and the rear partition had never been replaced fully, not permanent, just temporary. * * * When they cut it in half they partitioned the rear portion with some sort of tem-

porary material. I believe it was dry wall. * * * The house had never fully—once it had been placed on the lot it had never been fully finished for living. And then fire damage had never been fully repaired either."

Mr. Jowdy never again visited the property, and just left it empty. Plaintiff testified she visited the property several times after 1959 but did not say exactly when or what condition the property was in. She then said she went to the property in January 1963 and found it to be "all demolished". She said the whole back of the house was like someone had taken a knife and cut it down; there was garbage all around, and the windows had been boarded up. In her opinion the lot was worth about $300.00 and the improvements were not worth more than $200.00 or $300.00 unless the place was remodeled. She still maintained the building was white stucco—not an army barracks—and she said she found no evidence of a fire.

We first consider whether an action in waste lies under the facts herein.

■ Finding very little law in Arizona on the subject of waste, we are compelled to look elsewhere. The definition of waste as found in 56 Am.Jur., Waste, § 2, Page 450 (1947), reads as follows:

"Waste * * * is a species of tort, which may be briefly and very generally defined as the destruction, misuse, alteration, or neglect of premises by one lawfully in possession thereof, to the prejudice of the estate or interest therein of another."

And at § 4, Page 452:

"Waste is classified as voluntary or actual (sometimes called commissive), and permissive or negligent waste. Voluntary waste may be done by such acts as destroying, altering, or removing buildings, or cutting down timber trees. The failure of the tenant to exercise the ordinary care of a prudent man for the preservation and protection of the estate is permissive waste."

Thus, three elements are essential to the cause of action:

1. There must be an act constituting waste.
2. The act must be done by one legally in possession.
3. The act must be to the prejudice of the estate or interest therein of another.

■■ Applying this law, we first consider in connection with element No. 1 defendants' argument that the evidence is not legally sufficient to establish an act of waste on their part, and that the interest they have in the property does not subject them to liability. The facts are undisputed that the defendants completely divorced themselves from any concern over the property and did not make any plans for its protection. We believe this act clearly amounts to evidence upon which the trier of fact can find negligence required to constitute permissive waste since during the time of the waste defendants had the possessory rights to the property. Neglect by one lawfully in possession to the prejudice of the estate or interest of another in the property can be a basis for the action.

In Graffell v. Honeysuckle, 30 Wash.2d 390, 191 P.2d 858, 863 (1948), it was said " * * * Permissive waste implies negligence or omission to do that which will prevent injury, as, for instance, to suffer a house to go to decay for want of repair or to deteriorate from neglect." Although the evidence does not show the actual cause of the deterioration of the house, it does reflect that the defendants did not provide for its protection in any manner whatever while in constructive possession and that they have failed to show that the deterioration was caused by anything other than their negligence. This we find is sufficient to support the trial court in its judgment.

■■ We next consider element No. 2. This requirement, that of legal possession by the defendants, is undisputed. However, the defendants have argued that since they owned only the vendee's equitable interest in the property and did not

assume the purchase contract, they are not liable for waste. We cannot agree. Waste will lie against a party rightfully in possession of property who has less than the fee simple title thereto. Caprito v. United States, 217 F.2d 783 (5 Cir. 1954). In Sec. 392 of Vendor & Purchaser, Vol. 55, Am. Jur. (1946), at Page 813, we find the following language:

> "Where the vendee under a contract for the purchase and sale of land goes into possession and the vendor retains title as security for the purchase money, the relation between them, so far as the security is concerned, is much the same as that of mortgagee and mortgagor. Hence, as a general rule, principles governing the rights and liabilities as between mortgagor and mortgagee for waste committed upon the mortgaged premises determine the duties of the vendee toward the vendor respecting use of the premises by the former, and his liability for any acts of waste committed thereon. The purchaser under a contract for the sale of land, although entitled to the possession of the land pending the payment of the purchase money and the making of the conveyance, has no right to commit waste to the impairment of the security of the vendor, in the absence, at least, of anything in the contract of sale enlarging his rights in this respect."

There is nothing in the record in this case even suggesting an enlargement of the defendants' common law rights.

Defendants argue that as mere assignees of the vendee's interest, they should not be held to the same duty. It has been held that the assignee of a lessee has the same duty to prevent waste as the lessee. Curtiss v. Livingston, 36 Minn. 380, 31 N.W. 357 (1887). We can see no reason why the assignee of a vendee should not be held equally responsible, at least in a case such as this where at all times the defendants were in constructive possession of the property and the successor of the vendor's interest did not have notice that the property was being abandoned and neglected.

Finally, we consider element No. 3, turning to the requirement of prejudice to the interest of the plaintiff. Defendants have argued that the evidence is legally insufficient on the question of damages. 93 C.J.S. Waste § 17d, page 575 (1956), states:

> "The general rules as to burden of proof in actions at law and in equity apply in actions to recover for and to enjoin waste. It devolves on plaintiff to show that waste has been committed to his injury, and the amount of damages, if any, to the freehold."

Under Arizona law there is a distinction between the degree of proof necessary to establish the fact of damages and that necessary to fix the amount. Once the plaintiff has clearly established that he has suffered damages, his burden is relaxed and he need only show the amount with reasonable certainty, free from mere speculation or conjecture. Gilmore v. Cohen, 95 Ariz. 34, 386 P.2d 81, 11 A.L.R.3d 714 (1963); Harris Cattle Company v. Paradise Motors, Inc., 104 Ariz. 66, 448 P.2d 866 (1968).

In the instant case there is evidence that the property was damaged after the Jowdys took legal possession. The testimony was uncontradicted that the house had been partitioned off when the Jowdys purchased their interest and was in a "livable" condition. It was also uncontradicted that the back end of the house was open and generally "demolished" and "unlivable" at the time the plaintiff saw it some two years later. Thus, on the issue of fact of damages the trial court's decision is supported by the evidence.

On the question of amount of damages, the evidence is not strong. Two measures of damages were available to plaintiff. She could show either the difference in market value before and after the injury, or the cost of restoration. City of Globe v. Rabogliatti, 24 Ariz. 392, 210 P. 685 (1922). No evidence was presented on the cost of restoration. Defendants argue that the plaintiff must show that restor-

ation is not possible before she can rely on decreased market value as a measure of damages. We do not find this to be the law in Arizona. Where damages to realty may be measured, either by the difference in the market value immediately before and immediately after injury, or by the cost of restoration, and the plaintiff gives evidence as to one, it is up to the defendant, who has the burden of showing a reduction in damages, to show that the other measure of damages would be less. Mikol v. Vlahopoulos, 86 Ariz. 93, 340 P.2d 1000 (1959). Since there was no evidence presented by either side on the cost of repair, the loss in market value was properly considered. The defendant Jowdy testified that at the time he purchased the property it was worth $2,500.00. The plaintiff testified that in her opinion the property, including the improvements, was not worth more than $500.00 to $600.00 in 1963 after it was abandoned. There was no other evidence on market value either before or after the commission of waste. The trial court must have relied upon these figures in assessing damages and then limited the amount to plaintiff's interest in the property; i.e., the $1,980.27 balance due on the sales contract with the Guerins. No objection is made on this basis. Plaintiff gave her opinion as to the value of the property. It is well settled that an owner may testify concerning the value of his real or personal property even if he is not qualified as an expert, and the fact that he is not an expert goes to the weight of the testimony and not the competency. Board of Regents of University, etc. v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959); Schatt-Ajax Industries v. Churchill, 3 Ariz.App. 34, 411 P.2d 457 (1966). We believe plaintiff's having a vendor's interest through the special warranty deed makes her an owner within the meaning of this rule.

In conclusion, the evidence on the issue of amount of damages was at a minimum, but we cannot say that it was based on mere speculation or conjecture. The weight of the evidence was for the court to determine and the amount of damages was a question to be resolved by the trier of fact. Harris Cattle Company v. Paradise Motors, Inc., supra. As an appellate court, we should not substitute our opinion for that of the trier of fact unless there is no reasonable evidence to support the findings.

Affirmed.

STEVENS and CAMERON, JJ., concur.