In the Matter of the ESTATE of Thomas Milton MOYER, Deceased.

Joseph SMART, Petitioner,

v.

Karla V. MOYER, Objector.

No. 15469.

Supreme Court of Utah.

March 14, 1978.

Brian M. Barnard, Salt Lake City, for petitioner.

J. Douglas Kinateder, of Legal Aid Society of Salt Lake, Salt Lake City, for objector.

CROCKETT, Justice:

Objector, Karla V. Moyer, appeals from an order of the district court that she cause the body of her adult son, Thomas Milton Moyer, who had been buried 10 months before, to be exhumed and cremated. This order was granted pursuant to reciprocal motions for summary judgment by petitioner, Joseph Smart,[1] and the objector.

The objector's contentions are: (1) that the trial court erred in assuming that the body of deceased was property subject to disposition by will; (2) that the deceased, having been buried without the executor doing anything to interfere therewith, the latter should be deemed to have waived any right to have the deceased cremated as provided in his will; and (3) that the trial court erred in summarily ruling against her contention that the executor had consented to the burial of her son, when there was dispute as to that fact.

Thomas Milton Moyer, who had been living in Phoenix, Arizona, but was visiting his mother in Salt Lake City, died there on Christmas Day, 1976. With him on that trip was Father Raymond Landry, who incidentally, was named executor of Thomas' will. Father Landry informed the deceased's mother (objector) and his family of the will and that it stated deceased's desire to be cremated as directed by the executor. Nevertheless, the deceased was then buried in the Salt Lake City Cemetery.

In the affidavits of the respective parties, there is diametric dispute as to the proceedings prior to and the conditions upon which the burial took place. In her affidavit the mother avers that upon discussion of their respective desires, Father Landry compromised with the family regarding the issue of burial or cremation; and that he agreed to the burial, rather than cremation, if deceased could be buried in his Catholic robes. Deceased's sister Louise M. Jaeger filed an affidavit of similar import. Father Landry filed an affidavit stating that he never agreed to any such compromise, but that he was at all times opposed to the burial of the deceased. Christopher J. Smart, a friend who accompanied the deceased and Father Landry to Salt Lake, also filed an affidavit which supports Father Landry's statements.

A fact which we regard as being of critical importance is that after the funeral, without any objection or attempt to interfere by Father Landry or anyone else, the deceased was buried in his Catholic robes in the Salt Lake City Cemetery. On the basis of the record above delineated, the trial court granted petitioner's motion for summary judgment that the body of the deceased be exhumed and cremated.

1. Petitioner is the duly nominated and appointed personal representative in this proceeding, ancillary to the probate proceeding on deceased's will in Maricopa County, Arizona.

■ A foundational question here is as to the right of a person to control and direct the disposition of his body after death. The matter of the disposition of the dead, and what happens after death, have always been among the serious concerns of mankind. For that and other reasons, which need no elaboration here, the subject is so involved in the public interest, including its health, safety and welfare, that it is not subject entirely to the desires, or the whim or caprice of individuals, but is subject to control by law.[2]

■ It is our view that the laws relating to wills and the descent of property were not intended to relate to the body of a deceased; and that it forms no part of the "property" of one's estate in the usual sense, as other chattels or property.[3] Nevertheless, we agree with petitioner's contention that a person has some interest in his body, and the organs thereof,[4] of such a nature that he should be able to make a disposition thereof, which should be recognized and held to be binding after his death, so long as that is done within the limits of reason and decency as related to the accepted customs of mankind.[5] However, because of the involvement of the public interest and the rights and responsibilities of survivors, this is a property right of a special nature; and we do not desire to be understood as saying that this right should be regarded as an absolute property right by which a person could give absurd or preposterous directions that would require extravagant waste of useful property or resources, or be offensive to the normal sensibilities of society in respect for the dead.

■ Conceding the correctness of petitioner's first contention, as explained above, that an executor under a will has a right and a duty to carry out any such reasonable and proper directions, there remains the second question: whether under the circumstances here shown the executor should be deemed to have waived that right, so that he cannot now insist that the deceased's body should be exhumed and cremated.

At the time of deceased's death, Father Landry knew of the will and of the provision therein regarding cremation and of his rights and duty in that regard. He also had an effective and expeditious means of carrying out that directive.[6] Regardless of what was said between the concerned parties, the indisputable fact is that he chose not to do so, but failed to act and permitted the mother and family to arrange and carry out the burial. From any other action taken, except for the prompt and appropriate action of the deceased's mother, the remains of the deceased would have lain without any disposition at all. It surely requires no comment that this would have been wholly intolerable.

■ Since the most ancient of times people have had a reverent regard for the remains of their loved ones, especially of children for their parents and parents for their children; and this naturally includes an ardent desire that their remains be treated with respect and allowed to remain in undisturbed peace and rest. It is therefore a sound and well-established policy of the law that a person, once buried, should not be exhumed except for the most com-

---

2. 22 Am.Jur.2d p. 555, citing *Wyeth v. Board of Health,* 200 Mass. 474, 86 N.E. 925.

3. *O'Donnell v. Slack,* 123 Cal. 285, 55 P. 906 (1899).

4. That our legislature has recognized that a person has property rights in his body and can so dispose of his organs, see Anatomical Gift Act, U.C.A.1953, Sec. 26–26–1 et seq.

5. It appears that the modern view adopted by a majority of courts that have considered the matter recognize that there is a property right

of some nature, sometimes referred to as a quasi-property right. Those courts that do not so recognize hark back to the time when such matters were under the jurisdiction of the ecclesiastical courts and human remains were not regarded as property. See annotation in 7 A.L. R.3d p. 747; and also 22 Am.Jur.2d p. 557.

6. U.C.A.1953, Sec. 75–3–701, expressly provides that "prior to appointment, a person named executor in a will may carry out written instructions of the decedent relating to his body, funeral, and burial arrangements."

pelling of reasons.[7] Consistent with that policy, upon our analysis of the undisputed facts shown here, it is our opinion that it should be ruled as a matter of law that because of his failure to timely act thereon, the executor should be deemed to have waived any right conferred in the will to direct the disposal of the deceased's remains and that he should remain buried where he is.[8]

Our conclusion as just stated on the issue of waiver renders it unnecessary to consider the appellant's (objector's) further contentions.

Reversed. The parties to bear their own costs.

MAUGHAN, WILKINS and HALL, JJ., concur.

ELLETT, C. J., concurs in result.

---

7. See *King v. Frame,* 204 Iowa 1074, 216 N.W. 630 (1927), cited in 21 A.L.R.2d at page 476, see also annotation commencing at 472.

8. *Fowlkes v. Fowlkes,* Tex.Civ.App., 133 S.W.2d 241 (1939), cited in Jackson, The Law of Cadavers 2d 1950, at page 117.