OQUIRRH ASSOCIATES, a Utah limited partnership, Plaintiff–Appellant,

v.

FIRST NATIONAL LEASING COMPANY, INC., a Utah corporation; Roger Loiselle; Margaret Loiselle; Frank P. Bernard; Ian M. Cumming; Forthcoming Investments, a Utah limited partnership; Stephen D. Swindle; Annette P. Cumming; and Frank P. Bernard, Defendants and Appellees.

No. 930553–CA.

Court of Appeals of Utah.

Dec. 16, 1994.

David R. Olsen, Dan W. Egan, and Paul M. Simmons (argued), Suitter Axland Armstrong & Hanson, Salt Lake City, for appellant.

Jeffrey E. Nelson (argued), Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for appellees Forthcoming, I. Cumming, A. Cumming, and S. Swindle.

E. Nordell Weeks (argued), Salt Lake City, for appellee Frank P. Bernard.

Before DAVIS, JACKSON and ORME, JJ.

JACKSON, Judge:

Oquirrh Associates (Oquirrh), a Utah limited partnership, appeals the multiple grants of summary judgment in favor of Frank Bernard and in favor of Forthcoming Investments, a Utah limited partnership; Annette and Ian Cumming, alleged general partners of Forthcoming Investments; and Stephen D. Swindle, attorney for Forthcoming Investments.[1] We affirm each of the appealed grants of summary judgment.

## FACTS

Oquirrh owned certain real property in Salt Lake City which it sold to Roger and Margaret Loiselle by a uniform real estate contract dated October 19, 1977 (Oquirrh–Loiselle contract). The contract provided for a purchase price of $210,000, with a down payment of $15,000. The balance, bearing interest at an annual rate of nine percent, was to be paid in monthly installments of $1,500, ending in a balloon payment due on October 19, 1989.

The Loiselles subsequently conveyed their interest in the property to Frank Bernard by a separate uniform real estate contract dated March 1, 1979 (Loiselle–Bernard contract). This new contract provided for a purchase price of $217,000, with a down payment of $25,000. The balance, bearing interest at an annual rate of nine and one-half percent, was to be paid in monthly installments of $1,614.44 until paid in full.

Less than nine months later, Bernard conveyed his interest in the property to a group of buyers headed by Michael Brady by executing yet another uniform real estate contract, this one dated November 15, 1979 (Bernard–Brady contract). The terms of this contract provided for a purchase price of $270,000, with a down payment of $50,000. The balance, bearing interest at an annual rate of ten percent, was to be paid in monthly installments of $1,931.60 until paid in full.

Subsequently, the Brady group assigned and delegated its rights and obligations under the Bernard–Brady contract. The Bernard–Brady contract was further assigned pursuant to various documents, eventually being transferred to Chad Corporation (Chad) in December 1982.

On December 22, 1983, Chad assigned its interest in the Bernard–Brady contract to Forthcoming. As part of this transaction, Forthcoming executed a promissory note to Chad in the amount of $32,817.63 plus interest. In addition, Forthcoming had previously received a quitclaim deed from the Loiselles, giving Forthcoming the Loiselles' interest in the property, as well as the right to receive all monies due from Bernard under the Loiselle–Bernard contract.

Forthcoming fully discharged its obligations to Chad under the note and retained possession and control of the premises until March 30, 1988, when Forthcoming entered into an agreement to convey its interest in the property to First National Leasing Company (First National). As part of that transaction, Forthcoming assigned and delegated its rights and obligations under the Bernard–Brady contract to First National.

Oquirrh received the $1,500 monthly payments owed by the Loiselles directly from Bernard until September 1988. After that, Oquirrh received no further payments under the Oquirrh–Loiselle contract and brought an action to foreclose on the property in January 1989.

A default judgment was entered against the Loiselles and Chad. Pursuant to that judgment, the property was sold to Oquirrh at a sheriff's sale. Following the sale, a deficiency judgment was entered in favor of Oquirrh against the Loiselles and Chad for the amount of $162,664.75 plus interest. In addition, Oquirrh spent $72,497 in repairs resulting from waste committed on the property some time subsequent to Forthcoming's assignment to First National.

Oquirrh then had a writ of garnishment issued against Bernard, seeking to garnish whatever claims the Loiselles may have had against him. Oquirrh also received from Chad an assignment of any claims Chad may have had against Forthcoming. Oquirrh subsequently filed a complaint against Bernard and Forthcoming, among others, to col-

---

1. This second group of parties will be referred to collectively as Forthcoming.

lect the deficiency judgment and to recover damages for waste.

Bernard and Forthcoming filed separate motions for partial summary judgment, seeking to dismiss Oquirrh's claims for a deficiency judgment against them. The trial court granted partial summary judgment in both cases. Bernard and Forthcoming then filed motions for summary judgment on Oquirrh's remaining claims against them. Oquirrh filed a cross-motion for partial summary judgment on its waste claims against Bernard and Forthcoming. The trial court denied Oquirrh's motion and granted Bernard and Forthcoming's motions.

A default judgment was subsequently entered against the Loiselles and First National in the amount of $72,497 for waste committed on the property. Oquirrh appeals.

## ISSUES

On appeal, Oquirrh asserts that the trial court erred in granting summary judgment in favor of Bernard and Forthcoming because (1) the parties dispute an issue of material fact concerning whether Bernard assumed the Loiselles' obligations to Oquirrh, thereby becoming liable for the deficiency under the Oquirrh–Loiselle contract; (2) Forthcoming assumed the Loiselles' obligations to Oquirrh by accepting the quitclaim deed from the Loiselles, thereby becoming liable for the deficiency under the Oquirrh–Loiselle contract; (3) the Loiselles could assert a claim for waste against Bernard, which Oquirrh could enforce through the writ of garnishment it obtained ·against Bernard; and (4) Chad could assert a claim for waste against Forthcoming, which Oquirrh could enforce because of the assignment it received from Chad.

## STANDARD OF REVIEW

■ Summary judgment is proper only when no genuine issues of material fact exist, and the moving party is entitled to "judgment as a matter of law." Utah R.Civ.P. 56(c); *Republic Group, Inc. v. Won–Door*

*Corp.*, 883 P.2d 285, 288 (Utah App.1994). We do not defer to the trial court's conclusion that facts are undisputed nor its legal conclusions supported by those facts. *Republic Group*, 883 P.2d at 288. Thus, we review the trial court's grant of summary judgment for correctness. *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). Furthermore, "we will view the facts, including all inferences arising from those facts, in a light most favorable to the party opposing the motion and will allow the summary judgment to stand only if the movant is entitled to judgment as a matter of law." *Id.* at 288–89.

## ANALYSIS

### I. Claims for Deficiency

Oquirrh seeks to hold both Bernard and Forthcoming liable for the deficiency under the Oquirrh–Loiselle contract, claiming that these defendants assumed the Loiselles' obligations under that contract.

### A. Alleged Assumption by Bernard

Oquirrh claims that Bernard made payments directly to Oquirrh, thereby evidencing his and the Loiselles' intent that he assume the Loiselles' obligations under the Oquirrh–Loiselle contract. Oquirrh claims that, at the least, such action by Bernard raises a factual question of the parties' intent, precluding the entry of summary judgment in Bernard's favor.

■ The Loiselles contracted to convey their interest in the property to Bernard by executing a separate uniform real estate contract, not by assigning and delegating the rights and obligations of the Oquirrh–Loiselle contract. The Loiselle–Bernard contract, executed nearly one year and five months after execution of the Oquirrh–Loiselle contract, contained a different purchase price, different payment amounts, a different interest rate, and dramatically different repayment terms than the Oquirrh–Loiselle contract.[2] Rather than an assignment, the transaction between the Loiselles and Ber-

---

2. The Loiselle–Bernard contract required payment of the balance due over a thirty-year period, while the Oquirrh–Loiselle contract required a balloon payment of the remaining balance due twelve years from the execution of that contract.

nard constituted a subpurchase by subcontract, similar to the situation described in *Hansen v. Green River Group,* 748 P.2d 1102 (Utah App.1988). In *Hansen,* this court concluded that while a subpurchase did create privity of estate between the original vendor and the subpurchaser, it did not create privity of contract between them unless the parties so agreed. *Id.* at 1104 n. 2. The parties in this case reached no such agreement.

■ Even if the subpurchase by Bernard could constitute an assignment of the Oquirrh–Loiselle contract, "whether an assignment of the entire contract includes an assumption of liabilities depends on the terms of the assignment and the parties' intent." *Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991). Our supreme court further stated that "[a]n assignment is interpreted according to the rules of contract construction," and if the contract is not ambiguous, "the intention of the parties must be determined from the words of the agreement." *Id.*

■ The Addendum to the Loiselle–Bernard contract contains the following unambiguous language:

Seller [the Loiselles] hereby agrees to hold harmless and defend Buyer [Bernard] against any rights, claims, interests, liens or options asserted against Buyer or the Subject property by any party as a result of any contractual commitments made by or on behalf of any party prior to the execution of this agreement. *Buyer expressly accepts only those obligations imposed by this agreement.*

(Emphasis added.) The clear and unequivocal language of the Loiselle–Bernard contract expressly negates the possibility that Bernard intended to assume the Loiselles' obligations under their contract with Oquirrh. Thus, we will not look beyond the wording of the agreement to determine the parties' intent.

We conclude that Bernard did not assume any obligations under the Oquirrh–Loiselle contract. Accordingly, Bernard is not liable for any deficiency under that contract. The trial court correctly granted summary judgment in favor of Bernard on this claim.

**B. Alleged Assumption by Forthcoming**

■ Oquirrh also claims that Forthcoming assumed the Loiselles' obligations to Oquirrh when Forthcoming accepted a quitclaim deed to the property from the Loiselles. The Oquirrh–Loiselle contract contained the following language:

It is understood and agreed that the stipulations aforesaid are to apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto, and the benefits hereunder shall inure to the Buyer or its assignees.

Oquirrh argues that by accepting the quitclaim deed, Forthcoming became a direct "successor" of the Loiselles in accordance with the terms of the Oquirrh–Loiselle contract and thus, became contractually bound to the terms of that agreement.

■ However, Oquirrh's claim fails for several reasons. First, the language in the Oquirrh–Loiselle contract referring to "heirs, executors, administrators, successors and assigns" of the parties can only refer to those who succeed to one party's interest *in the contract* through inheritance, assignment, or the like. A quitclaim deed is generally defined as "[a] deed of conveyance operating by way of release; that is, intended to pass any title, interest, or claim which the grantor may have *in the premises.*" Black's Law Dictionary 1251 (6th ed. 1990) (emphasis added). Furthermore, such a deed "purports to transfer nothing more than [an] interest which [the] grantor *may* have." *Id.* (emphasis added). Accordingly, Forthcoming obtained the Loiselles' interest in the property subject to any existing encumbrances against that interest. Forthcoming merely became a successor to the Loiselles' property interest, but, absent agreement to the contrary, the Loiselles retained their contractual rights and obligations with Oquirrh.

In addition, the Loiselles also quitclaimed and assigned to Forthcoming

the right to collect and receive any and all monies now due or to become due [the Loiselles] by virtue of [the Loiselle–Bernard contract;] provided however, [the Loiselles,] by executing and delivering this

Quitclaim Deed to [Forthcoming,] acknowledge and agree that [Forthcoming] shall have no obligation to perform any of the obligations [under the Loiselle–Bernard contract].

While the Loiselles assigned their rights under their contract with Bernard, they expressly denied delegating any of their duties to Bernard. Nowhere in the agreement is there any mention of the Oquirrh–Loiselle contract. The Loiselles did not assign their interest in that agreement, and Forthcoming did not assume any liabilities under that agreement.[3] Accordingly, Forthcoming is not liable for any deficiency under the Oquirrh–Loiselle contract. The trial court correctly granted summary judgment in favor of Forthcoming on this claim.

## II. Claims for Waste

Oquirrh further claims that both Bernard and Forthcoming are liable for waste committed on the property. Oquirrh obtained a writ of garnishment against Bernard, seeking to garnish whatever claims the Loiselles may have had against Bernard. Oquirrh also obtained an assignment from Chad of any and all claims that Chad may have had against Forthcoming. Through this convoluted process, Oquirrh has attempted to gain privity of contract with Bernard and Forthcoming in order to assert claims against them for waste.

Both the Loiselle–Bernard contract and the Bernard–Brady contract, which was later assigned by Chad to Forthcoming, contain the provision: "Buyer agrees that he will not commit or suffer to be committed any waste, spoil, or destruction in or upon said premises, and that he will maintain said premises in good condition."

Although Oquirrh admits that any waste to the property occurred after both Bernard and Forthcoming had relinquished possession and control of the property to other parties, Oquirrh claims that Bernard and Forthcoming still had a contractual obligation to not "suffer to be committed any waste." Oquirrh argues that Bernard and Forthcoming breached this contractual obligation and that, by stepping into the shoes of those parties in privity of contract with Bernard and Forthcoming, Oquirrh can assert a claim for waste against each of them.

■ Nevertheless, the boilerplate provision in the uniform real estate contract prohibiting waste merely makes such conduct a breach of the contract. The provision was not intended to create any additional liability for the buyers; it was intended to allow the sellers to choose among the remedies available for either breach of contract or tort when the buyers committed acts of waste on the property. Furthermore, the contractual language distinguishing committing waste from suffering waste to be committed likely refers to the distinction between active and permissive waste.

■ However, the contractual provision was not intended to make buyers of property liable for waste committed by subsequent possessors. In all claims for waste, three essential elements must be met:

1. There must be an act constituting waste. [This means there must be an act constituting the destruction, misuse, alteration, or neglect of premises.]

2. The act must be done by one legally in possession.

3. The act must be to the prejudice of the estate or interest therein of another.

*Hansen v. Green River Group,* 748 P.2d 1102, 1106 (Utah App.1988) (quoting *Jowdy v. Guerin,* 10 Ariz.App. 205, 208, 457 P.2d 745, 748 (Ariz.Ct.App.1969)).

Oquirrh does not allege that Bernard or Forthcoming committed any act of destruction, misuse, or alteration. Oquirrh's allega-

---

3. *See Winegar v. Froerer Corp.,* 813 P.2d 104, 108 (Utah 1991) ("If the contract is in writing and the language is not ambiguous, the intention of the parties [that one party would assume the other's liability under a prior contract] must be determined from the words of the agreement."); *Hansen v. Green River Group,* 748 P.2d 1102, 1104 n. 3 (Utah App.1988) ("It is a general principle that an assignment of a contract does not operate to cast upon the assignee the duties and obligations or the liabilities imposed by the contract on the assignor, in the absence of the assignee's assumption of such liabilities.") (quoting 6 Am.Jur.2d Assignments § 109 (1963) (footnote omitted)).

tions of waste essentially amount to claims that Bernard and Forthcoming neglected the premises and allowed others to commit waste.

■ However, for such acts to give rise to a cause of action for waste, the acts must be done by a party legally in possession of the property. We conclude that this second element of waste can only be met by one who has actual or constructive possession of the property. *See Jowdy*, 10 Ariz.App. at 208–09, 457 P.2d at 748–49. Neither Bernard nor Forthcoming were actually in possession of the property when they allegedly committed acts of permissive waste. The Arizona Court of Appeals considered the defendants in *Jowdy* to have "constructive possession" of property because, although they never took actual possession of the property, the defendants had possessory rights to the property and left it in an abandoned and neglected condition. *Id.*

In our case, neither Bernard nor Forthcoming had rights to possession and control of the property when the waste occurred. Accordingly, neither party can be held liable for any waste committed on the premises. The trial court correctly granted summary judgment in favor of both Bernard and Forthcoming on Oquirrh's claims of waste.[4]

CONCLUSION

Bernard and Forthcoming did not expressly or impliedly assume any obligations under the Oquirrh–Loiselle contract. Accordingly, neither party is liable to Oquirrh for any deficiency under that contract. Furthermore, a claim for waste cannot be asserted against a party who had neither actual nor constructive possession of the property at the time waste occurred. Thus, Bernard and Forthcoming cannot be held liable for waste under any of Oquirrh's theories. No issues of material fact remain to be resolved that might preserve Oquirrh's claims. We there-

fore affirm the trial court's grants of summary judgment in favor of Bernard and Forthcoming.

DAVIS, J., concurs.

ORME, J., concurs, except that as to Section II, concurs only in the result.

---

4. Oquirrh's theory for holding the nonpossessors liable based on a covenant running with the land was not properly argued before the trial court; thus, Oquirrh has not preserved this issue for appeal. *See Salt Lake County v. Carlston*, 776 P.2d 653, 655 (Utah App.1989) (holding that before party may advance issue on appeal, record must clearly show that issue was timely present-

ed to trial court in manner sufficient to obtain ruling thereon); *James v. Preston*, 746 P.2d 799, 801 (Utah App.1987) (holding that matters not raised in pleadings nor put in issue at trial may not be raised for first time on appeal). Oquirrh also failed to present to the trial court its argument for gaining contractual privity with Forthcoming under a writ of garnishment.