2005 UT App 203

**Deanna PUGH and Robyn Huffman, Petitioners and Appellees,**

v.

**Leslie DOZZO–HUGHES (Sic) Leslie Dozzo–Otero, Respondent and Appellant.**

**No. 20031026–CA.**

Court of Appeals of Utah.

May 5, 2005.

Rehearing Denied June 16, 2005.

Michael D. Hughes, Rick C. Mellen, Hughes & Bursell PC, St. George, for Appellant.

Kathleen M. McConkie, Law Offices of Kathleen McConkie, Bountiful, for Appellee Deanna Pugh.

Samuel G. Draper, St. George, for Appellee Robyn Huffman.

Before Judges GREENWOOD, JACKSON, and ORME.

## OPINION

GREENWOOD, Judge:

¶ 1 This case results from an unfortunate dispute between a mother and a wife over the disposition of the remains of their respective son and husband. Respondent Leslie Dozzo–Hughes (Wife) appeals the trial court's grant of Petitioner Deanna Pugh's (Mother) motion for summary judgment, which permanently enjoined Wife from disinterring and cremating the body of Curtis Hughes (Decedent). We reverse and remand for an evidentiary hearing.

## BACKGROUND [1]

¶ 2 Decedent was raised in Utah as a member of the Church of Jesus Christ of Latter-day Saints (LDS), but moved to New Mexico and became an Evangelical Christian many years before his death. Nevertheless, Mother always considered Decedent to be LDS because Decedent's name remained in LDS records.

¶ 3 Decedent committed suicide on February 27, 2002. At that time, Wife and Decedent were married, but were having marital problems, apparently partly due to Decedent's gambling addiction. Early in February 2002, Decedent left a voice mail message for Wife, stating that he would be "gone" in fifteen minutes and asking Wife to have his remains cremated and his ashes poured into the Rio Grande at the Paseo Bridge. However, Decedent did not commit suicide that night.

¶ 4 It was not until approximately three weeks later that Decedent carried out his threat, poisoning himself in an Albuquerque, New Mexico motel room. In contemplation of his suicide, Decedent left two notes. One note (the Note), addressed to Mother, partially typed and bearing Decedent's signature, stated in part: "I would like to be cremated ASAP and have my remains put in the Rio Grande at paseo bridge please." [2]

¶ 5 Shortly after Decedent's death, Decedent's brother found the notes.[3] The following morning, Decedent's brother notified Wife of Decedent's death and of the Note's existence. At that time, Decedent's brother suggested that Mother would arrange for Decedent's burial in St. George, Utah. Unaware of the Note's contents, Wife did not mention Decedent's voice mail statement from three weeks prior, believing Decedent

---

1. "When reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Carrier v. Salt Lake County*, 2004 UT 98, ¶ 3, 104 P.3d 1208. Accordingly, the facts are so presented.

2. On appeal, the parties do not dispute the Note's authenticity.

3. The second note is not relevant to the present action.

was "playing games" when he left the message asking to be cremated. Therefore, not having read the Note, Wife did not object to Mother's plans to bury Decedent in St. George.

¶ 6 Furthermore, Wife's ignorance of the Note is explained by Mother's refusal, on several occasions, to reveal the Note's contents to Wife. When Wife asked about the Note, Mother told Wife to get an attorney if she wanted to read it.

¶ 7 Following Decedent's funeral, Wife met with Mother and other Hughes family members. At that meeting, Mother asserted that she had read the Note, and showed the Note to Wife briefly before Mother "ripped" the Note from Wife's hands. During the time Wife held the Note, she noticed a portion in which Decedent expressed his desire not to have a funeral, but was unable to read the section regarding cremation before the Note was taken from her. Wife asserts that Mother sought to conceal the Note's contents from her. Mother, however, claims that Wife knew of the Note's entire contents.

¶ 8 According to Wife, it was not until the summer of 2002 that she learned of the Note's contents, including the cremation request. Believing that Decedent's wishes were not honored, Wife sought to have Decedent's remains disinterred so they could be cremated.

¶ 9 Anticipating action by Wife to disinter and cremate Decedent's remains, Mother sought to enjoin Wife from doing so by obtaining a temporary restraining order (the Order). The trial judge, Judge James Shumate, conducted two days of evidentiary hearing on Mother's request that the Order be made permanent. A third day of hearing was scheduled. However, the day before that hearing, Mother's former counsel filed a motion to recuse Judge Shumate. See Utah R. Civ. P. 63. Believing that, in accordance with section (b)(2) of rule 63, see Utah R. Civ. P. 63(b)(2), no hearing could thereafter take place before Judge Shumate, neither Wife nor her counsel appeared. Nevertheless, Judge Shumate held a hearing. At that proceeding, after a discussion of the motion to recuse, Mother's former counsel stated, I "withdraw the motion to recuse and make a motion to dismiss for failure to prosecute, Your Honor." To which Judge Shumate replied, "Your motion is granted, Counsel.... The matter is dismissed.... If you'll submit the pleadings, Counsel, I'll sign them."

¶ 10 The following day, Mother's former counsel submitted, not an order dismissing the action for failure to prosecute, but rather an "order granting permanent injunction." Judge Shumate mistakenly signed the order.[4] Later, in a rule 59(e) motion, see Utah R. Civ. P. 59(e), Judge Shumate reversed his order, determining that all judicial action after the filing of the motion to recuse was "invalid," as it violated rule 63(b)(2).

¶ 11 Judge G. Rand Beacham thereafter replaced Judge Shumate. Judge Beacham, sua sponte, vacated Mother's former counsel's motion to dismiss. Thereafter, both parties filed motions for summary judgment. Ultimately, Judge Beacham granted Mother's motion for summary judgment, permanently enjoining Wife from disinterring and cremating Decedent's remains. Wife appealed the trial court's grant of summary judgment.

¶ 12 Meanwhile, Mother's action was purchased in a forced execution sale by Robyn Huffman (Substitute Petitioner).[5] Substitute Petitioner then filed a motion to substitute herself for Mother, which this court granted. Thereafter, Substitute Petitioner, along with Wife, filed a stipulated motion suggesting partial mootness pursuant to rule 37(a) of the Utah Rules of Appellate Procedure, see Utah R.App. P. 37(a), stipulating to several of Wife's arguments on appeal and asking this

4. Mother's *former* counsel's submission of an erroneous order to the trial court for signature, even if merely negligent, circumvented Wife's due process rights and is contrary to standards of professionalism in the practice of law.

5. Mother accrued $26,500.16 in legal fees owed to a St. George law firm. That law firm obtained a judgment against her for the unpaid fees. In September 2004, Mother's claims in this action were sold at an execution sale to Substitute Petitioner for approximately $750. Mother alleges that Substitute Petitioner is an agent of Wife. In an untimely motion, Mother argues that Substitute Petitioner should not replace Mother in the present action.

court to remand the action to the district court with instructions to vacate Mother's injunction and award Wife attorney fees and costs. Mother opposes this motion. We first revisit the motion to substitute parties, as its impact is potentially outcome determinative.

## MOTION TO SUBSTITUTE PARTIES

¶ 13 This court may grant a motion to substitute parties if "necessary." Utah R.App. P. 38(b). Indeed, a rule 38 motion to substitute parties on appeal is permissive, not mandatory. *See* Utah R.App. P. 38(a) (stating another "party *may* be substituted as a party" by motion (emphasis added)).

¶ 14 Previously, we granted Substitute Petitioner's order to substitute herself for Mother in this action. However, we now believe that we improvidently granted that motion. Substitute Petitioner has no identity of interest with Mother, as evidenced by Substitute Petitioner's subsequent motion wherein she stipulates to most of Wife's assertions and arguments and asks this court to remand the action to the trial court to vacate Mother's injunction and award Wife attorney fees and costs. Furthermore, the cause of action purchased by Substitute Petitioner has no monetary value, as Mother sought and obtained only injunctive relief.

¶ 15 The situation presented here differs from the ostensibly permissible instance when a judgment creditor buys, at a judgment debtor's forced sale, the judgment debtor's cause of action against it. *See Applied Med. Techs., Inc. v. Eames,* 2002 UT 18, ¶ 21, 44 P.3d 699 (allowing nonlawyer to purchase, at arm's length, "claims against himself at a sheriff's sale."); *but cf. Snow, Nuffer, Engstrom & Drake v. Tanasse,* 1999 UT 49, ¶ 19, 980 P.2d 208 (holding "it is against the public policy of Utah for a law firm to purchase in an execution sale a legal malpractice cause of action that has been

filed against it."). Here, Substitute Petitioner has adopted the opposing party's position, not merely to dismiss Mother's action, but to adversely affect Mother by vacating the injunction, effectively guaranteeing Decedent's disinterment and cremation, and stipulating that Mother pay Wife's attorney fees.[6]

¶ 16 Moreover, the instant action differs from Utah cases addressing the purchase of causes of action, in that here, the relief sought and granted is equitable—an injunction barring disinterment of Decedent's remains. *See e.g., Applied Med. Techs.,* 2002 UT 18 at ¶ 21, 44 P.3d 699 (purchasing "stock claims"); *Tanasse,* 1999 UT 49 at ¶ 19, 980 P.2d 208 (purchasing legal malpractice claim). Equity demands that we vacate our prior substitution of parties order. Accordingly, we vacate our order substituting Mother with Substitute Petitioner, as it was improvidently granted.[7]

## ISSUES AND STANDARDS OF REVIEW

¶ 17 The first issue before us is whether a trial judge may hold a hearing after a party files a motion to recuse that judge. As this issue implicates the trial judge's authority—a question of law—we review for correctness, affording no deference to the trial court. *See Brown v. Glover,* 2000 UT 89, ¶ 15, 16 P.3d 540 (noting "the interpretation of a rule of procedure is a question of law that we review for correctness.").

¶ 18 Second, we must determine whether the trial court properly granted Mother's motion for summary judgment. We review a trial court's grant of a motion for summary judgment for correctness, affording no deference to the trial court. *See Ford v. American Express Fin. Advisors,* 2004 UT 70, ¶ 21, 98 P.3d 15.

### I. Judge Shumate Proceedings

¶ 19 Wife urges that at the April 15, 2003 hearing on Mother's request for an

---

6. We note that Wife and Substitute Petitioner cite no basis in their filings for an award of attorney fees against Mother. Because "it is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief," *State v. Thomas,* 1999 UT 2, ¶ 11, 974 P.2d 269 (quotations and citation omitted), we decline to enter such a ruling.

7. In accordance with our recall of the order to substitute parties, Substitute Petitioner is no longer a party to this appeal, and therefore, Substitute Petitioner's stipulations are of no effect.

injunction, Mother's counsel voluntarily dismissed Mother's action, and thus, the action should be deemed dismissed. Mother, on the other hand, claims that after her motion to recuse Judge Shumate was filed, the judge lacked authority to dismiss her action.

¶ 20 Once a party has filed a motion to disqualify a judge, "the judge against whom the motion and affidavit are directed shall, *without further hearing,* enter an order granting the motion or certifying the motion and affidavit to a reviewing judge." Utah R. Civ. P. 63(b)(2) (emphasis added); *see Barnard v. Murphy,* 882 P.2d 679, 682 (Utah Ct.App.1994) (noting "[n]o other option is available under the rule.").

¶ 21 In the present case, Judge Shumate held an ex parte hearing on April 15, 2003, the day after Mother filed the rule 63 motion to disqualify. As both exclusive options under rule 63(b)(2) require judicial action "without further hearing," Utah R. Civ. P. 63(b)(2), there should have been no April 15, 2003 hearing and any action taken during the hearing is void.[8]

## II. Summary Judgment

¶ 22 Wife argues that the trial court improperly granted Mother's motion for summary judgment, claiming that the court failed to view the facts and inferences in her favor, as the nonmoving party.

¶ 23 Summary judgment is proper when there is no genuine issue of material fact and "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Importantly, when considering a motion for summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Carrier v. Salt Lake County,* 2004 UT 98, ¶ 3, 104 P.3d 1208. However, in the instant case, the trial court did the opposite—interpreting facts and inferences in favor of Mother, the moving party.

¶ 24 For instance, with regard to the fact-sensitive issue of waiver—"the intentional relinquishment of a known right," *Jensen v. IHC Hospitals Inc.,* 2003 UT 51, ¶ 82, 82 P.3d 1076 (quotations and citations omitted)—the trial court found that "[h]aving chosen to allow the body to be buried in Utah, instead of being cremated and disposed of in New Mexico, [Wife] waived any right to choose another form of disposition." In so ruling, the trial court commented that Wife knew of Decedent's wishes from the voice mail message, wherein Decedent indicated his desire to be cremated. But this interpretation discounted Wife's testimony that she believed Decedent did not mean what he said on the voice mail and that Mother withheld and misrepresented the Note's contents, thereby presenting a material dispute as to whether Wife waived her right to dispose of Decedent's remains.

¶ 25 Furthermore, even though the trial court was required to assume that the Note contained Decedent's wishes, it ruled that the Note was "not material" to its decision, stating "[Wife] has not given evidence that the [N]ote creates a binding, enforceable legal obligation to accomplish a cremation." This too misconstrues the alleged import of the Note. Wife did not assert that the Note was necessarily binding on the parties, but rather that had she known of the Note's contents she would have objected to Decedent's burial in Utah.

¶ 26 In sum, the trial court improperly weighed and evaluated the relative strength of the proffered evidence. This was error, because at that stage in the proceedings—a summary judgment motion—the court was to view all facts and reasonable inferences in the light most favorable to the nonmoving party. *See Carrier,* 2004 UT 98 at ¶ 3, 104 P.3d 1208. Furthermore, there were disputed issues of material fact, such as whether Wife knew of the Note's contents when she acquiesced to Decedent's burial in St. George, making summary judgment improper. These issues turn on witness credibility and

---

8.  Indeed, the failure to follow Utah Rule of Civil Procedure 63(b)(2) is, in part, responsible for this case's strange posture. We acknowledge, however, that the actions of Mother's former counsel were the prime cause of the disarray. Judge Shumate accurately noted that Mother's former counsel had tried to play "hard ball" and "repeated[ly] fail[ed] to adequately perform his duty."

cannot be decided without an evidentiary hearing.

## CONCLUSION

¶ 27 First, we vacate our ruling on Substitute Petitioner's motion to substitute parties as improvidently granted. That motion is hereby denied. Second, the April 15, 2003 hearing was improperly held and any action taken in said hearing is void. Finally, the trial court erred in granting Mother's motion for summary judgment because the trial court viewed the evidence in the light most favorable to the moving party and there were disputed material facts.

¶ 28 Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.[9]

¶ 29 WE CONCUR: NORMAN H. JACKSON and GREGORY K. ORME, Judges.

---

**9.** By remanding, we imply no unfavorable treatment of the public policy for leaving buried bodies undisturbed. *See In re Estate of Moyer*, 577 P.2d 108, 110–11 (Utah 1978) (stating "[i]t is ... a sound and well-established policy of the law that a person, once buried, should not be exhumed except for the most compelling of reasons." (footnote omitted)). However, that policy has to be considered in relation to the facts to be found by the trial court after receiving testimony and evidence from the parties.