2006 UT App 325

Arnold K. WEST and Mary Helen West,
Plaintiffs and Appellees,

v.

Claudia N. CASE, individually, and as
Trustee of the Lamar West Trust dated
May 6, 1993, and as Trustee of the Geor-
gia Lamar West Trust dated January 21,
1999, Defendant and Appellant.

No. 20050315–CA.

Court of Appeals of Utah.

Aug. 3, 2006.

Vincent C. Rampton, Jones Waldo Holbrook & McDonough, Salt Lake City, for Appellant.

James Tucker Hansen, Hansen & Wright, Orem, for Appellees.

Before Judges BILLINGS, DAVIS, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Claudia N. Case appeals from the trial court's summary judgment order quieting title to real property in Arnold K. and Mary Helen West (the Wests), ordering Case to convey title to the Wests, and awarding the Wests their attorney fees. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Georgia Lamar West (Lamar West) owned a piece of property in Utah County that was divided into three parcels. In 1987, the Wests entered into a Uniform Real Estate Contract (the Agreement) with Lamar West, Mary West's mother, for the purchase of two of these parcels (the Property). At this time, Lamar West executed a warranty deed to the Property in favor of the Wests and placed the deed in escrow. The Wests were to make monthly payments directly to the escrow company, and upon completion of the payments the escrow company was to release the deed to the Wests. Shortly after purchasing the Property, the Wests began residing on the Property.

¶ 3 On May 6, 1993, while the warranty deed was being held in escrow, Lamar West created the first of two trusts (the Trust) [1] and named herself as trustee. On the same day, Lamar West transferred one of the parcels that comprised the Property to herself as trustee by quitclaim deed. Lamar West did not inform the Wests of the transfer or seek to interfere with the Wests' possession of the parcel.

¶ 4 The Wests paid the balance remaining on the Property in March 1998 and thereafter received their warranty deed from the escrow company. Upon attempting to record the deed, however, the Utah County Recorder informed the Wests that a portion of the Property had previously been transferred to the Trust. The Wests sought a reconveyance from Lamar West, but she refused. Lamar West died on March 1, 1999, at which point another of Lamar West's daughters, Case, became the trustee of the Trust. Case also refused the Wests' request to reconvey the Property.

¶ 5 On June 9, 1999, acting as trustee of the 1993 trust, Case executed a quitclaim

---

1. Lamar West created a second trust in 1999, the terms of which expressed that it was to supersede the 1993 trust and that all of the property held by the 1993 trust was to be transferred into the 1999 trust. The transfer of the Property from the 1993 trust to the 1999 trust has no effect on our analysis, and for simplicity we treat both trusts as a single entity, the Trust, unless the context requires otherwise.

deed to herself as trustee of the 1999 trust, purporting to transfer all three parcels of Lamar West's original property to the Trust. Case claimed that the Trust owned the entire Property because the Wests had failed to fulfill their obligation under the Agreement to pay the taxes on the Property as they came due. The Wests claim that Lamar West told them not to worry about paying the taxes, and it is undisputed that Lamar West actually paid the property taxes over the years.[2]

¶ 6 In December 1999, the Wests filed an action against Case, individually and as trustee of the Trust, to quiet title in the Property, along with claims for breach of contract and slander of title. The trial court entered summary judgment quieting title to the Property in the Wests. The summary judgment order also stated that Case had breached the Agreement and ordered her to convey the Property to the Wests and pay their attorney fees and costs pursuant to the terms of the Agreement. Case appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 7 Case argues that the trial court should not have entered summary judgment quieting title in the Wests because there were issues of material fact regarding the Wests' performance under the Agreement. Case also argues that the court's summary judgment order should not have declared her to be in breach of the Agreement because she was not a party to the Agreement and had not assumed its obligations. "Summary judgment is proper when there is no genuine issue of material fact and 'the moving party is entitled to a judgment as a matter of law.'" *Pugh v. Dozzo–Hughes,* 2005 UT App 203, ¶ 23, 112 P.3d 1247 (quoting Utah R. Civ. P. 56(c)). "We review a trial court's grant of a motion for summary judgment for correctness, affording no deference to the trial court." *Id.* at ¶ 18.

2. The three parcels were apparently never divided for tax purposes, and thus, each year Lamar West received and paid a single tax bill for all three parcels.

## ANALYSIS

¶ 8 Case challenges two aspects of the trial court's summary judgment order, the quieting of title to the Property in the Wests and the determination that Case breached the Agreement. We affirm in part and reverse in part.

I. Summary Judgment Quieting Title in the Wests Was Appropriate

¶ 9 Case argues on appeal that summary judgment on the issue of ownership of the Property was improper because there were factual questions about the Wests' compliance with the terms of the Agreement. Specifically, Case alleges that the Wests failed to pay the property taxes as required under the terms of the Agreement, and that this failure precludes the Wests from being deemed the owners of the Property. We disagree with Case's suggested application of the law to the circumstances of this case.

¶ 10 It is undisputed that the Wests themselves did not pay the taxes on the Property during the term of the Agreement. Rather, Lamar West continually paid the single tax bill covering her parcel of land and the Wests' two parcels. It is also undisputed that Lamar West never declared the Wests to be in default or otherwise sought to enforce their tax obligations under the Agreement. The Wests presented affidavits in support of summary judgment stating that Lamar West told them on several occasions that they "did not have to worry about paying the property taxes on the [P]roperty and that [Lamar West] would pay the property taxes for the time period that the Warranty Deed was held in escrow." In opposition, Case presented a single affidavit in which she averred that "[a]ccording to the terms of the [Agreement], the [Wests] are in default under the terms of the contract in that they have failed and refused to pay property taxes," and that "[b]efore the death of Georgia Lamar West, the [Wests] took unfair advantage of Lamar [West] in various matters, specifically, matters relating to the property at issue."[3]

3. Case also asserted in her April 2000 answers to interrogatories that "Lamar West was ... concerned that taxes were not being paid." Whatever relevance this general statement may have to

¶ 11 Case's affidavit fails to raise a material question of fact relevant to the property tax issue. Despite Case's general allegation that the Wests "took unfair advantage" of Lamar West, the Wests' affidavit statements that Lamar West paid the taxes gratuitously stand undisputed. There is nothing in the Agreement that precluded Lamar West from gratuitously paying the property taxes on her daughter's behalf, nor was there any penalty to the Wests if they allowed her to do·so. Thus, Case's legal conclusion that the Wests are in "default" because they allowed Lamar West to pay the property taxes on their behalf is not supported by the language of the Agreement.

¶ 12 Case's affidavit statement that the Wests "refused" to pay the taxes is similarly irrelevant. Assuming the truth of Case's statement, Lamar West nevertheless had the choice to enforce the Agreement or to simply pay the taxes on the Wests' behalf. The undisputed evidence is that Lamar West chose to pay the taxes, that she told the Wests not to worry about it, and that she never attempted to enforce the Agreement's default provisions against the Wests. Under the circumstances of this case, Lamar West's ongoing voluntary payment of the property taxes served to excuse the Wests' nonpayment, rendering the Wests' failure to pay each tax bill as it came due a series of excused performances.[4]

¶ 13 On this factual record, the trial court properly determined that, as a matter of law, the Wests had satisfied their obligations under the Agreement despite Lamar West's payment of the property taxes. Upon their final payment on the Agreement in 1998, the Wests perfected their equitable title to the Property and were entitled to ownership of the Property free and clear. The recorded 1993 and 1999 transfers of the Property to

and by the Trust constituted a cloud upon the Wests' title, and the trial court properly entered summary judgment quieting title in the Wests.

¶ 14 The trial court also properly ordered Case to execute and deliver a proper warranty deed to the Wests. Once a settlor makes an enforceable agreement to sell real property, the obligation to transfer the property to the purchaser runs with the land to a subsequent trustee who takes possession of the property as the trust res. *See* George G. Bogert & George T. Bogert, *Trusts & Trustees* § 719 (2d ed. rev.1982). "[T]he trustee by accepting the trust takes it subject to such in rem liabilities and has a duty in [her] representative capacity to satisfy those liabilities out of trust property, and will be liable personally for failure to perform [her] fiduciary duties in this respect." *Id.* Thus, Lamar West and Case both had in rem obligations to transfer the Property to the Wests upon completion of the Agreement, and the trial court did not err by enforcing that obligation.

¶ 15 Case also argues that an action for quiet title was not properly before the trial court, and that the court erred by failing to hear oral argument before entering summary judgment. We see no merit to either of these claims.

¶ 16 Case did not raise the issue of the sufficiency of the Wests' pleadings below, nor does she argue on appeal that the court below committed plain error. Thus, she has not preserved the issue for appeal. *See Brookside Mobile Home Park v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 ("[I]n order to preserve an issue for appeal the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule

---

the tax issue, Case did not include it in her affidavit or otherwise present it to the trial court in opposition to the Wests' motion for summary judgment. Thus, we do not consider it. *See, e.g., Smith v. Four Corners Mental Health Ctr., Inc.,* 2003 UT 23, ¶ 40, 70 P.3d 904 ("[W]hen the moving party has presented evidence sufficient to support a judgment in its favor, and the opposing party *fails to submit* contrary evidence, a trial court is justified in concluding that no genuine issue of fact is present or would be at trial."

(emphasis added) (quotations and citation omitted)).

4. While the Wests' obligation to pay each individual tax bill was excused upon Lamar West's voluntary payment thereof, the Wests were never *prospectively* excused from paying taxes in the event that Lamar West changed her mind. Thus, there was no amendment to the Agreement, and Case's argument that the statute of frauds applies to this case is without merit.

on that issue."). Regardless, the Wests took equitable title to the Property when the Agreement was signed, *see Hall v. Fitzgerald,* 671 P.2d 224, 227 (Utah 1983) ("[E]quitable title [passed] to the purchasers when the contract was signed."), and the Wests' complaint properly requested the removal of a cloud upon that title.

¶ 17 To the extent that the trial court's failure to allow oral argument was error, we deem that error harmless. *See Price v. Armour,* 949 P.2d 1251, 1254–56 (Utah 1997) (applying harmless error analysis to a trial court's failure to hold a hearing under rule 4–501(3) of the Utah Rules of Judicial Administration). Case has not identified any reason to believe that oral argument would have altered the trial court's legal ruling on the quiet title issue, which we affirm today as a matter of law.

## II. The Trial Court Erred in Finding Case a Successor to the Agreement

¶ 18 In its summary judgment order, the trial court also determined that Case was a successor to Lamar West under the terms of the Agreement, that the terms of the Agreement applied to Case, and that Case had breached the Agreement by failing to transfer the Property to the Wests. The court also awarded attorney fees and costs against Case pursuant to a provision of the Agreement.[5] Case argues that she was not a signatory to the Agreement in either her personal or representative capacity, and that neither she nor the Trust can be deemed a party to the Agreement as a successor to Lamar West.

¶ 19 Case is correct that the only signatories to the Agreement were Lamar West and the Wests. In making its successor determination, the trial court relied on a provision of the Agreement stating that it was binding upon the "heirs, executors, administrators, successors and assigns" of Lamar West. However, there was no formal assignment of the Agreement from Lamar West to Case or to the Trust, and no assumption of the liabilities of the Agreement by the Trust or Case

individually. Rather, Lamar West merely created the Trust and transferred the Property into it by quitclaim deed.

¶ 20 This court faced a similar situation in *Oquirrh Associates v. First National Leasing Co.,* 888 P.2d 659 (Utah Ct.App.1994), wherein the appellant argued that acceptance of a quitclaim deed to property bound a grantee to the terms of an existing sales contract on the property pursuant to a successors clause in the contract. *See id.* at 663. In rejecting this argument, we stated:

> Oquirrh's claim fails for several reasons. First, the language in the Oquirrh–Loiselle contract referring to "heirs, executors, administrators, successors and assigns" of the parties can only refer to those who succeed to one party's interest *in the contract* through inheritance, assignment, or the like. A quitclaim deed is generally defined as "[a] deed of conveyance operating by way of release; that is, intended to pass any title, interest, or claim which the grantor may have *in the premises.*" Furthermore, such a deed "purports to transfer nothing more than [an] interest which [the] grantor *may* have."

*Id.* (alterations in original) (emphasis in original) (citations omitted). We concluded that a quit-claim grantee merely becomes a successor to the grantor's property interest. *See id.*

¶ 21 We see no meaningful distinction between the contract language in *Oquirrh* and that in the Agreement, nor any way to distinguish Case's position from that of the *Oquirrh* grantee. Accordingly, although Case had an in rem obligation to transfer the Property to the Wests, we determine that neither Case nor the Trust became bound by any other terms of the Agreement merely because they took ownership of the Property. We reverse the trial court's determination that Case is a "successor" to the Agreement and bound by its terms. We also reverse the court's award of attorney fees, which was

---

5. On its face, the summary judgment order is ambiguous as to whether it applies to Case individually, or as trustee, or both. A subsequent order clarified that the money judgment against Case was in her capacity as trustee and not as an individual.

premised solely on the terms of the Agreement.[6]

## CONCLUSION

¶ 22 The undisputed facts below indicate that Lamar West voluntarily made each tax payment on the Property, and that Lamar West never made a claim for these payments under the Agreement or sought any other remedy against the Wests prior to the termination of the Agreement. According to the Wests' uncontroverted affidavits, Lamar West told them on several occasions not to worry about paying the taxes. This course of behavior by Lamar West excused the Wests from their contractual obligation to pay the taxes themselves. The trial court properly determined that the Wests did not breach the Agreement by allowing Lamar West to pay the taxes, and properly granted summary judgment quieting title in the Wests and ordering Case to convey the Property.

¶ 23 We also conclude that Case is not a party to or bound by the Agreement, either individually or as a trustee. We therefore reverse the trial court's determination that Case breached the Agreement and its award of attorney fees on that theory, and remand this matter for further proceedings consistent with this opinion.

¶ 24 WE CONCUR: JUDITH M. BILLINGS and JAMES Z. DAVIS, Judges.

---

6. We merely hold that a direct fee award pursuant to the Agreement cannot be imposed against Case or the Trust on the state of the record before us. We do not decide whether the Wests may be entitled to an award of attorney fees and costs against the estate of Lamar West, and we express no opinion as to whether the Wests could collect any such award from Case or the Trust on some other legal or equitable theory.