748 P.2d 1102 (1988)
Brent D. HANSEN, Kathleen P. Hansen, Kent D. Hansen, and Sylvia V. Hansen, Plaintiffs and Appellants,
v.
GREEN RIVER GROUP, a Utah general partnership, Boyd Hansen, Ramon D. Pratt, Nolan Wathen, Arthur Melville, Marsha Utaine, Brent P. Pratt, and Synvest Corporation, a Nevada corporation, Defendants and Respondents.
No. 860140-CA.
Court of Appeals of Utah.
January 28, 1988.
*1103 Jackson Howard (argued), Danielle Eyer Davis, Howard, Lewis & Petersen, Provo, for plaintiffs and appellants.
George M. Harmond, Jr. (argued), Price, for Melville and Utain.
Dale R. Kent, Salt Lake City, for Green River Group.
Before JACKSON, BILLINGS and GREENWOOD, JJ.

OPINION
JACKSON, Judge:
This litigation arose from real estate transactions involving the Green River Motel. Plaintiffs ("Hansens"), as sellers, obtained a judgment and decree of foreclosure against Synvest Corporation ("Synvest"), as buyer. The judgment included amounts for delinquent payments, interest, attorney fees, and waste. On appeal, Hansens seek to have the Green River Group partnership ("Group") and individual defendants Boyd Hansen and Ramon Pratt included in the judgment. We affirm.
Joyce Nations sold the Green River Motel to buyers Woodruff and Strong by uniform real estate contract on November 5, 1975. On September 1, 1980, Hansens acquired their interest by quitclaim deed. At the same time, Hansens (as sellers) and Synvest (as buyer) executed a uniform real estate contract for the motel; the sale price was $645,000, with $150,000 down. By December of 1980, Synvest (as seller) and Group (as buyer) had executed another uniform real estate contract for the motel; the sale price was $565,000, with $70,000 down. Hansens continued to make payments to Nations although their payments from Synvest were sporadic. Synvest's payments from Group were also sporadic; the last one was made in December, 1983. On February 29, 1984, Synvest and Group executed an agreement rescinding their contract, and Group quitclaimed its interest back to Synvest.
Hansens subsequently filed this action requesting a decree of foreclosure and damages for waste to the premises. After bench trial, Hansens' judgment was entered against Synvest on May 3, 1985, with an order directing a foreclosure sale of the motel.[1] Their causes of action were dismissed as to all other defendants. Hansens' post-trial motion to amend the judgment to include all defendants was denied.
On appeal, Hansens propose a potpourri of theories as grounds for reversal: (1) the Synvest-Group contract was an assignment and assumption of the Hansen-Synvest contract; (2) Hansens were third-party beneficiaries of the Synvest-Group contract; (3) the general partners of Group are liable to Hansens because Group is the alter ego of Synvest; and (4) in any event, Group committed waste upon the motel property for which damages must be assessed.

*1104 STANDARD OF REVIEW
The trial court's interpretation of the words of the parties' contract is reviewed by this court as a question of law under a correctness standard. Kimball v. Campbell, 699 P.2d 714, 716 (Utah 1985); Seashores Inc. v. Hancey, 738 P.2d 645, 647 (Utah App. 1987). However, if the contract is ambiguous and the trial court makes factual findings about the intent of the parties based on extrinsic evidence, our review is strictly limited. If those findings are supported by substantial, competent evidence in the record, they are not clearly erroneous under Utah R.Civ.P. 52(a) and we will not disturb them on appeal. Id.; Porter v. Groover, 734 P.2d 464, 465 (Utah 1987).

ASSIGNMENT AND ASSUMPTION
Hansens claim that a filled-in uniform real estate contract (the Synvest-Group contract) evolved into an express assignment of all rights and duties and an express assumption of all debt and payment obligations of a prior similar contract (the Hansen-Synvest contract). The genesis of the idea is found in the language inserted in blank lines at paragraph 20 of both printed forms: "Buyer agrees to abide and be bound by the conditions that appear in all underlying contract [sic]."
The trial court found this language in the Synvest-Group contract was not an assumption by Group of the obligation to make Synvest's payments to Hansens or an assignment by Synvest of the Hansen-Synvest contract. We agree. Although the terms of the two uniform real estate contracts were basically the same, there was $80,000 difference in the consideration to be paid. The Synvest-Group contract created only an obligation in Group to pay its own purchase price to the seller, Synvest. If Synvest and Group had intended otherwise, there would have been no reason for them to execute a new and separate uniform real estate contract;[2] instead, they could have merely executed a simple assignment and assumption of the Hansen-Synvest contract, as did the parties in Prudential Fed. Savings & Loan Ass'n v. King, 22 Utah 2d 379, 453 P.2d 697 (1969), on which appellants misguidedly rely. Furthermore, if Synvest and Group actually intended that Group should make the payments to Hansens, such a provision should have and could have been stated in the contract with specificity.[3] Notably absent are the usual words of either an assumption or an assignment, such as "assumes," "agrees to pay," "assigns," "transfers" or "conveys."
The trial court properly concluded that the Synvest-Group contract was not an assignment to and an assumption by Group of Synvest's rights and duties under the Hansen-Synvest contract.

THIRD-PARTY BENEFICIARIES
Hansens next challenge the trial court's conclusion that they were not third-party beneficiaries of the Synvest-Group contract. As a general rule, the rights of third-party beneficiaries are determined by the intentions of the parties to the subject contract. Tracy Collins Bank & Trust v. *1105 Dickamore, 652 P.2d 1314, 1315 (Utah 1982) (citing 2 S. Williston, A Treatise on the Law of Contracts § 356 (1981)).
Where it appears from the promise or the contracting situation that the parties intended that a third party receive a benefit, then the third party may enforce his rights in the courts and is deemed a donee beneficiary. Where, however, no intention to make a gift appears and performance of the promise satisfies or recognizes an actual or supposed duty of the promisee to the beneficiary, then the third party may still recover as a creditor beneficiary... . But where any benefits to a person are incidental to the performance of the promise and such person is neither a donee nor a creditor beneficiary, he is a stranger to the promise and may assert no rights thereunder.
Id. (citation omitted).
The trial court concluded there was no evidence Group intended its contract with Synvest to be for the benefit of Hansens and that Group's performance under its contract would only incidentally benefit Hansens. On appeal, Hansens assert that the Synvest-Group contract was intended to benefit them as "creditor beneficiaries," again relying on the following language inserted in paragraph 20 of the parties' uniform real estate contract: "Buyer agrees to abide and be bound by the conditions that appear in all underlying contract" [sic].
We agree with the trial court that there is nothing in the contract or the circumstances of its making to show that Synvest and Group intended their contract to benefit Hansens. "For a third-party beneficiary to have a right to enforce a right, the intention of the contracting parties to confer a separate and distinct benefit upon the third party must be clear." Rio Algom Corp. v. Jimco Ltd., 618 P.2d 497, 506 (Utah 1980). The contract does not mention Hansens or call for payment by Group of Synvest's obligation to Hansens. See Schwinghammer v. Alexander, 21 Utah 2d 418, 446 P.2d 414, 415 (1968). Unlike the document in Continental Bank & Trust Co. v. Stewart, 4 Utah 2d 228, 291 P.2d 890 (1955), the Synvest-Group contract did not even refer specifically to Synvest's debt to Hansens. Finally, as stated above, there was no assignment and assumption of the Hansen-Synvest contract.
Here, Group promised to pay Synvest a sum of money. In a separate contract, Synvest had promised to pay Hansens another sum of money. Group did not promise to fulfill Synvest's obligations to Hansens. Evidence that some of the partners in Group knew of the Hansen-Synvest contract does not compel the conclusion that Hansens were anything other than incidental beneficiaries of the Synvest-Group contract. As such, they were not entitled to enforcement of it. Rio Algom Corp., 618 P.2d at 506.

ALTER EGO
Next, Hansens attack the trial court's finding that Synvest was not the alter ego of Group.[4] They argue that the lower court erred in failing to conclude from the evidence that Synvest Corporation was a sham that merely provided a corporate shield for the real parties in interest, i.e., the general partners of Group.
In Messick v. PHD Trucking Serv., Inc., 678 P.2d 791, 794 (Utah 1984), the Utah Supreme Court reaffirmed its prior adoption of the following two-part test for determining when disregard of the corporate entity is justified:
[T]here must be a concurrence of two circumstances: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow.
Norman v. Murray First Thrift & Loan Co., 596 P.2d 1028, 1030 (Utah 1979). Significant *1106 factors in a determination of "unity of interest and ownership" were recently enumerated by this court as:
(1) under-capitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.
Colman v. Colman, 743 P.2d 782, 786 (Utah App. 1987) (footnotes omitted) (citing Ramsey v. Adams, 4 Kan. App.2d 184, 603 P.2d 1025, 1028 (1979)).
On appeal, Hansens point to only four items of "evidence" as proof of the "unity of interest" part of the Norman test. The first is an application for an assumed name filed with the Utah Department of Business Regulation. The second is a promissory note to Hansens (allegedly a partial payment of Synvest's down payment to them) signed by Boyd Hansen and Ramon Pratt as individuals and not as Synvest officers. Although both of these documents were attached to appellants' trial brief as exhibits, neither was offered and admitted as evidence at trial. Thus, we decline to entertain appellants' argument that they constitute evidence compelling a finding in their favor on their alter ego theory.
The third item of proof Hansens have referred us to is a February 29, 1984 quitclaim deed, executed in conjunction with the rescission of the Synvest-Group contract, by which Group conveyed its interest in the motel property back to Synvest for recited consideration of $10.00. They argue that, because the actual value of the property conveyed was in the hundreds of thousands of dollars, Synvest and Group must have an identity of interest. This evidence, however, clearly does not compel such a conclusion.
The fourth item of evidence is similarly uncompelling. One of Hansens' trial exhibits was a statement filed by Group in its bankruptcy proceeding in which it was designated as "Green River Group dba Synvest-Green River Group dba Green River Motel." This use of the joint hyphenated name does not constitute legally sufficient proof of the "unity of interest" prong of the Norman test.
The trial court's finding that Synvest is not the alter ego of Group is supported by substantial record evidence, and we are not convinced that any error has been made. Accordingly, the trial court's finding is not clearly erroneous, and we will not disturb it on appeal. State v. Walker, 743 P.2d 191, 193 (Utah 1987); Utah R.Civ.P. 52(a).

WASTE OF PROPERTY
The trial court concluded that Hansens did not establish a cause of action for waste against the Group partnership or any of its individual partners. Three elements are essential to a cause of action for waste, which has been generally defined as "the destruction, misuse, alteration, or neglect of premises":
1. There must be an act constituting waste.
2. The act must be done by one legally in possession.
3. The act must be to the prejudice of the estate or interest therein of another.
Jowdy v. Guerin, 10 Ariz. App. 205, 457 P.2d 745, 748 (1969).
At trial, Hansens did not and could not specify any act of waste. They testified that their personal knowledge of the property's condition began in February, 1984, shortly before they regained possession. They apparently had no other evidence of the condition of the motel property at the time Group took possession late in 1980, since they have failed to direct us to such record evidence. Defendant Brent Pratt did, however, testify that the motel was in a state of disrepair, in "substandard condition," when he inspected it in October or November of 1980.
Without evidence as to the condition of the property when Group took possession, as well as evidence that Group was the cause of "deterioration, misuse, alteration or neglect of the premises" since that time, *1107 any repair and maintenance expenses incurred by Hansens after they took possession of the motel in April, 1984 are, by themselves, insufficient proof that acts of waste occurred.
Because there is substantial evidence in the record to support the trial court's finding of no acts of waste by Group and because we are not convinced a mistake has been made, it is not clearly erroneous. State v. Walker, 743 P.2d at 193; Utah R.Civ.P. 52(a). The trial court properly dismissed Hansens' waste claim against Group and its individual named partners.
The judgment of the trial court is affirmed. Costs to respondents Arthur Melville and Marsha Utaine.
BILLINGS and GREENWOOD, JJ., concur.
NOTES
[1] Because Synvest failed to answer or defend against the Hansens' complaint, default judgment was entered against the corporation on all causes of action, including the one for waste. The trial court's finding that Synvest had committed a specific sum of waste upon the property was based solely on the maintenance and repair expenses incurred by Hansens after they took over the motel in April, 1984. This evidence, however, is insufficient to support a cause of action for waste. See discussion infra. We note that Synvest did not appeal to challenge this erroneous finding or the portion of the judgment against it for waste.
[2] What we have in this case is a subpurchase by a subpurchaser by means of a subcontract. A subcontract by the purchaser, Synvest, to sell to Group under an executory land contract is not an assignment, but a separate, independent contract between them. The subpurchase creates between the original vendor (Hansens) and subpurchaser (Group) privity of estate, but does not, in the absence of agreement, create privity of contract between them. 92 C.J.S. Vendor & Purchaser § 314b (1955). When Hansens were notified of the sale by Synvest, Hansens held legal title subject to the equitable estate acquired by Group. Id.
[3] is a general principle that an assignment of a contract does not operate to cast upon the assignee the duties and obligations or the liabilities imposed by the contract on the assignor, in the absence of the assignee's assumption of such liabilities. As the assignment does not bring together the assignee and the other party to the contract, there cannot be the meeting of minds essential to the formation of a contract.
6 Am.Jur.2d Assignments § 109 (1963) (footnotes omitted). See 92 C.J.S. Vendor & Purchaser § 311d (2)(a) (1955) ("no deficiency decree on foreclosure can be rendered [against the assignee] where there is no assumption by the assignee").
[4] This finding was not mentioned in the written findings of fact. But the issue was pleaded and tried by the parties, and the finding appears in the trial court's post-trial memorandum decision denying appellants' motion to amend the judgment.