IN THE UTAH COURT OF APPEALS

----ooOoo----

Hillcrest Investment Company, LLC,      )      OPINION

     )

         Plaintiff and Appellant,      )      Case No. 20110322-CA

     )

v.      )      F I L E D

     )      (September 13, 2012)

Utah Department of Transportation,      )

     )      2012 UT App 256

         Defendant and Appellee.      )

-----

Second District, Farmington Department, 080700723
The Honorable John R. Morris

Attorneys:      David L. Arrington, Erin T. Middleton, Josh D. Chandler, and Adelaide
     Maudsley, Salt Lake City, for Appellant
     Mark L. Shurtleff and Brent A. Burnett, Salt Lake City, for Appellee

-----

Before Judges McHugh, Davis, and Thorne.

McHUGH, Presiding Judge:

¶1      Plaintiff Hillcrest Investment Company, LLC (Hillcrest) appeals from the district court's summary judgment in favor of defendant Utah Department of Transportation (UDOT). The district court concluded that Hillcrest does not have standing to pursue its claims against UDOT and that even if Hillcrest does have standing, it cannot prevail as a matter of law on its breach of contract and unjust enrichment claims.[1] We reverse

---

[1] Hillcrest does not challenge the district court's decision that it is without subject matter jurisdiction to consider Hillcrest's remaining claims due to Hillcrest's failure to file a notice of claim as required by the Governmental Immunity Act of Utah (the GIAU). *See* Utah Code Ann. § 63G-7-401(2) (2011). Thus, only Hillcrest's breach of

(continued...)

the summary judgment and remand for further proceedings to resolve the factual questions relating to Hillcrest's standing.

BACKGROUND[2]

¶2      This dispute arises out of UDOT's 2001 condemnation of real property in Centerville, Utah (the Condemned Property), as part of the Legacy Parkway Project. The Condemned Property comprised about 43 of the approximately 150 unimproved acres (the Trust Property) held by the Namroh Trust, the Phares T. Horman Family Trust, the SCV Horman Family Trust (the SCV Trust), and the Theodore and Birdie Horman Family Trust (collectively, the Horman Trusts).

¶3      Prior to UDOT's condemnation, the Horman Trusts planned to develop a business park on a portion of the Trust Property (the Project Site). In pursuit of that goal, they had successfully changed the zoning of the Project Site and had obtained Centerville City's (the City) approval of their development plans. The Project Site could be accessed only by a gravel road (the Access Road) that circumvented wetlands, which constitute about one-third of the Trust Property.

¶4      When the Horman Trusts learned that UDOT's plans for the Legacy Parkway included condemnation of the portion of the Trust Property on which the Access Road was located, the Horman Trusts advised UDOT of their development plans and the need to access the Project Site. The City also expressed concern that the loss of the Access Road would interfere with the development of the business park, which was located on the largest undeveloped piece of real estate remaining in the City. In a letter

---

[1](...continued)
contract and unjust enrichment claims are before us on appeal. *See id*. § 63G-7-301(1)(b) (providing that actions arising out of contractual rights are not subject to the notice of claim requirement); *Houghton v. Department of Health*, 2005 UT 63, ¶ 19 n.3., 125 P.3d 860 (acknowledging that equitable claims are not subject to the GIAU).

[2]Because this appeal is from a grant of summary judgment, we view "the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (internal quotation marks omitted).

dated October 28, 1999, UDOT represented to the City that its Legacy Parkway plans included a frontage road that would allow access to the Project Site. With that assurance and the Horman Trusts' permission, UDOT conducted an appraisal of the Trust Property. The appraisal report separated the Trust Property into four parcels and assigned each a parcel number. The Condemned Property is comprised of three of those parcels. The appraisal was premised on the assumption that UDOT would construct the frontage road. For example, the appraisal concluded that because "UDOT is going to install the roadway, at [its] expense," no severance damages were needed to compensate the Horman Trusts for the diminution of value in the portion of the Trust Property not condemned (the Remaining Property). Relying, in part, on that conclusion, the appraisal set the appropriate compensation amount for the Condemned Property at $1.27 million.

¶5     In September 2001, UDOT filed a condemnation action against the Horman Trusts. The exhibits to UDOT's complaint included a map of the Legacy Parkway that depicts the proposed frontage road. During subsequent negotiations, UDOT represented that it would build a frontage road on one of the three condemned parcels, Parcel 0067:173:C (Parcel C), so that the Horman Trusts could pursue their pre-condemnation plans with respect to the Project Site. Eventually, UDOT and the Horman Trusts reached an agreement on the value of the parcels, based on the understanding that the Legacy Parkway project would include a frontage road.

¶6     As a result, in January 2002, the parties entered into a Right of Way Contract (the Contract), whereby UDOT agreed to purchase the Condemned Property "free and clear" from the Horman Trusts for $1,933,905. Although the Contract further provides that "all work done under this agreement, shall conform to [all applicable laws and codes] and shall be done in a good and workmanlike manner," it states that, "[n]o work, improvement, alteration or maintenance will be done or made other than or in addition to that provided in this agreement." The Contract also contains an integration clause, which provides,

> The parties have here set out the whole of their agreement.
> The performance of this agreement constitutes the entire
> consideration for the grant of said tract of land and shall
> relieve [UDOT] of all further obligations or claims on that
> account, or on account of the location, grade and
> construction of the proposed highway.

Under the Contract, UDOT's obligation to pay the $1,933,905 settlement amount is triggered when UDOT takes possession of "Land as described in the Warranty Deed" for each of the three parcels, which are identified by their parcel numbers. There is no other description of the Condemned Property in the Contract.

¶7    On February 7, 2002, the trustee of each of the four Horman Trusts with an ownership interest in the Condemned Property, including Charles Horman as the trustee of the SCV Trust, executed warranty deeds for each of the three parcels, conveying their interests in the Condemned Property to UDOT. The warranty deeds for Parcel C convey "[a]n undivided . . . interest in a parcel of land in fee for a frontage road incident to the construction of a freeway . . . ." Subsequently, UDOT removed the Access Road.

¶8    In late 2005 and early 2006, the Horman Trusts conveyed all "real estate owned," including the Remaining Property and other real property located in Utah, Nevada, and Kentucky, to Hillcrest. Around that time, UDOT reconsidered its plan to build the frontage road, despite urging from Hillcrest and the City. In January 2006, Hillcrest notified UDOT that a failure to build the frontage road would "most likely render [the Remaining Property] undevelopable" and would "be in breach of contract." UDOT replied that due to "extensive litigation with the environmental community" and other delays involving the Legacy Parkway, it no longer intended to build the frontage road.[3] Instead, UDOT proposed that the City install the frontage road and indicated in a 2007 letter, "After all appropriate environmental clearances[,] . . . UDOT will make available a portion of the Legacy Parkway right-of-way for a frontage road." While UDOT has not yet made a portion of the right-of-way available, it maintains that it will do so if the City obtains the "necessary environmental clearances" and "an approved development plan" for the frontage road. The record indicates that the City has not done so and that the Project Site is currently inaccessible.

¶9    On December 1, 2008, Hillcrest filed suit against UDOT in the Second Judicial District Court for Davis County, asserting claims of breach of contract and unjust enrichment. Hillcrest also sought a declaratory judgment that UDOT is contractually

---

[3]The Legacy Parkway opened in September 2008. *See* UDOT, *Legacy Parkway and Preserve,* http://www.udot.utah.gov/main/f?p=100:pg:0:::1:T,V:2182 (last visited Sept. 7, 2012).

bound to construct the frontage road and an injunction for specific performance of that obligation.[4] UDOT moved for summary judgment on the grounds that Hillcrest lacked standing because it was not a party to the Contract; that even if Hillcrest could establish standing, the Contract did not require UDOT to build the frontage road; and that Hillcrest could not prevail on a claim of unjust enrichment as a matter of law.

¶10     After oral argument, the district court granted UDOT's motion for summary judgment on all of Hillcrest's claims. Specifically, the court ruled that Hillcrest did not have standing to enforce the Contract; that even if it did have standing, the Contract did not require UDOT to build the frontage road; and that a cause of action based on unjust enrichment was precluded because Hillcrest, as opposed to the Horman Trusts, had conferred no benefit on UDOT. Hillcrest now appeals.

ISSUES AND STANDARD OF REVIEW

¶11     Hillcrest argues that the district court erred in granting summary judgment because material issues of fact exist as to whether it has standing, whether the Contract is ambiguous with respect to UDOT's obligation to build the frontage road, and whether UDOT was unjustly enriched. Summary judgment is appropriate where "(1) 'there is no genuine issue as to any material fact' and (2) 'the moving party is entitled to a judgment as a matter of law.'" *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439 (quoting Utah R. Civ. P. 56(c)). We review a "district court's grant of summary judgment de novo, reciting all facts and fair inferences drawn from the record in the light most favorable to the nonmoving party." *Id*.

ANALYSIS

I. Standing

¶12     "[A] determination of standing is generally a question of law, which we review for correctness." *Holladay Towne Ctr., LLC v. Brown Family Holdings, LLC*, 2011 UT 9,

_____

[4]Other claims raised by Hillcrest in the district court were dismissed and are not at issue in this appeal.

¶ 18, 248 P.3d 452 (internal quotation marks omitted).  Because "standing is a jurisdictional requirement," *see Brown v. Division of Water Rights*, 2010 UT 14, ¶ 12, 228 P.3d 747, we must consider it before reaching the substantive issues in a case, *see In re K.F.*, 2009 UT 4, ¶ 21, 201 P.3d 985.  Hillcrest, as the party invoking jurisdiction, bears the burden of establishing the elements of standing.  *See Brown*, 2010 UT 14, ¶ 14 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  "Under the traditional test for standing, 'the interests of the parties must be adverse' and 'the parties seeking relief must have a legally protectible interest in the controversy.'"  *See Jones v. Barlow*, 2007 UT 20, ¶ 12, 154 P.3d 808 (quoting *Jenkins v. Swan*, 675 P.2d 1145, 1148 (Utah 1983)).

¶13    UDOT claims that Hillcrest does not have standing because Hillcrest has no legally protectible interest.  *See Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 222–23 ("[O]nly parties to a contract, or intended beneficiaries thereof, have standing to sue.").  In response, Hillcrest claims standing both because it is an assignee of the Horman Trusts' rights in the Contract and because Hillcrest is a beneficiary of the SCV Trust, one of the Horman Trusts that entered into the Contract with UDOT.  The district court ruled that Hillcrest lacked standing because it was not a party to the Contract or a third party beneficiary.  In addition, the district court concluded that Hillcrest "failed to present sufficient competent evidence that it was a beneficiary of, or successor entity to, the Horman Family Trusts."  We review the district court's standing decision "under the standard used for a dispositive motion at the relevant stage of litigation."  *See Brown*, 2010 UT 14, ¶ 15.  Thus, in response to UDOT's summary judgment motion, Hillcrest could not rest on the allegations of the complaint but was required to "'set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true.'"  *See id.* ¶ 14 (quoting *Lujan*, 504 U.S. at 561).

A.  Standing as an Assignee of the Rights Under the Contract

¶14    We first consider Hillcrest's argument that the Real Estate Purchase Contract (the REPC), by which the Horman Trusts conveyed all real estate owned to Hillcrest, also assigned the rights in the Contract.  "Under well-accepted rules of contract interpretation, we look to the language of the contract to determine its meaning and the intent of the contracting parties."  *Café Rio, Inc. v. Larkins-Giffords-Overton, LLC*, 2009 UT 27, ¶ 25, 207 P.3d 1235.  When the "language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law."  *Green River Canal Co. v. Thayn*, 2003 UT 50, ¶ 17, 84 P.3d 1134 (internal quotation marks

omitted).  A term or provision of the contract is ambiguous if it "is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies."  *See Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (internal quotation marks omitted).  While the court will consider "any credible evidence" in determining if a contract is ambiguous, *see Ward v. Intermountain Farmers Ass'n*, 907 P.2d 264, 268 (Utah 1995), such a conclusion requires that both competing interpretations be "'reasonably supported by the language of the contract,'" *see Daines*, 2008 UT 51, ¶ 31 (quoting *Ward*, 907 P.2d at 268).  Furthermore, "whether a contract is ambiguous is a question of law reviewed for correctness."  *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 10, 182 P.3d 326.

¶15    According to Hillcrest, the Contract is a "property right" and was therefore conveyed by the REPC under which Hillcrest purchased several properties from the Horman Trusts, including the Remaining Property.  The definition of the subject property is contained in paragraph 3 of the REPC and states,

> 3.  <u>Property</u>.  The property shall include all real estate owned by the Seller which, to the best of Seller's knowledge and belief, comprises all of the real estate, water rights, water shares and property rights owned by Seller (the "Property"), described on Exhibit A.  The property is located in the states of Utah, Nevada and Kentucky.  However, the Property shall also include all real estate, water rights, water share and property rights which may be later discovered to be owned by the Seller at the time of the execution of this Purchase Contract but was inadvertently left off the property itemized on Exhibit A.

When read in context, the reference to "property rights," is expressly limited to "real estate" owned by the Seller.  The REPC further indicates that such real estate, to the extent known, is listed on Exhibit A to the REPC.

¶16    The copy of Exhibit A in the record has been redacted, so that the only entry shown is the Remaining Property.  The headings on Exhibit A to the REPC are legible

and call for information consistent with the identification of real property.[5] The first section of Exhibit A bears the heading, "Property Description/Location," and provides columns for "Location," "County," "State," "Parcel Numbers," "Approximate Acreage," and "Purchase Price Allocation." Next, Exhibit A contains a heading for "Water Shares & Rights" that sets forth columns seeking the "Name," "# of Shares," "Certificate No.," and "Registered Owner." Our review of the redacted copy of Exhibit A indicates that it is designed for recording information about real property, including both land and water rights, but that it does not call for information relating to any contractual rights assigned to Hillcrest under the REPC. *See Salt Lake City Corp. v. Cahoon & Maxfield Irr. Co.*, 879 P.2d 248, 251 (Utah 1994) ("This court has long held that the rights to the use of water reflect 'an interest in real property.'" (quoting *In re Bear River Drainage Area*, 2 Utah 2d 208, 271 P.2d 846, 848 (1954)).

¶17    Indeed, at the time of the REPC, the Horman Trusts and Hillcrest were aware of the Contract with UDOT. Accordingly, even if we considered the rights under the Contract to be "real estate, water rights, [or] water share and property rights," as used in the REPC, the Contract rights should have been listed on Exhibit A, which was intended to be a complete list of "all real estate owned by the Seller," to the best of the Seller's knowledge and belief." Furthermore, Hillcrest has pointed us to no evidence that the Horman Trusts' rights under the Contract were "later discovered to be owned" by the Horman Trusts, thereby allowing them to be included under paragraph 3 of the REPC.

¶18    We are also persuaded by the fact that the REPC contains no express language of assignment. While Hillcrest is correct that "[p]arties need not follow any particular formalities in making an assignment," there must be some language in the document that indicates an intent to assign the contractual rights. In *Hansen v. Green River Group*, 748 P.2d 1102 (Utah Ct. App. 1988), we held that the language in a subcontract was not an assignment of the rights and duties under the original contract because "such a provision should have and could have been stated in the contract with specificity." *Id.* at 1104; *see also Shire Dev. v. Frontier Inv.*, 799 P.2d 221, 223 (Utah Ct. App. 1990) (holding that no assignment of a property interest occurred where "the record shows no indication that any assignment . . . ever took place" and reaffirming that "assignments

---

[5]The copy of Exhibit A in the record is comprised of only one page. For purposes of our analysis we assume that this is a complete copy because it is all that was provided to the district court in opposition to UDOT's summary judgment motion.

of interest in property should be stated in the contract with specificity" (quoting *Hansen*, 748 P.2d at 1104)). As in *Hansen*, the REPC here contains none of the "usual words" evidencing an assignment of the contract rights. *See Hansen*, 748 P.2d at 1104. In contrast, where the deed expressly indicates that it includes a conveyance of contracts, the Utah Supreme Court has allowed the original purchaser's grantee to enforce the contractual rights provided by the original purchase agreement. *See Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 2010 UT 6, ¶¶ 23–24, 230 P.3d 1000 (acknowledging that if a deed from the original purchaser of real property unambiguously assigns contract rights, "[t]he correct inquiry looks at the assignor's rights and liabilities under the contract").

¶19 Next, Hillcrest contends that the recitals contained in the REPC create ambiguity concerning the "property rights" conveyed. The first recital states that the "Seller is the fee title owner of certain real estate, water rights, water shares and property rights located in the states of Utah, Nevada and Kentucky (the 'Property') more particularly described on Exhibit A." This language is consistent with the intent to convey "real estate," which Seller can hold as the "fee title owner." While Hillcrest relies on the second recital, which explains that the "Seller comprises four successor liquidating trusts . . . for the purpose of converting all of the assets of the [Horman Trusts] to cash and distributing the resulting proceeds to the [Horman Trust] beneficiaries," the next paragraph states that "the Property comprises real estate." Likewise, the last recital, which Hillcrest also cites in support of its position, indicates that the sale is to "facilitate Seller's desire to convert all remaining real estate assets to cash and distribute said cash to the beneficiaries of Seller."

¶20 The right to sue UDOT for the failure to construct the frontage road cannot reasonably be characterized as "real estate" owned "in fee" by the Horman Trusts. Thus, Hillcrest's interpretation of the term "property rights" to include "contractual rights" is not "reasonably supported by the language" of the REPC. As a result, the REPC unambiguously did not assign the rights in the Contract to Hillcrest. *See generally Daines v. Vincent*, 2008 UT 51, ¶ 31, 190 P.3d 1269.

B. Standing as a Beneficiary of the SCV Trust

¶21 Next, Hillcrest argues that it has presented a genuine issue of material fact concerning whether it has standing as a beneficiary of the SCV Trust. According to Hillcrest, the Horman Trusts, including the SCV Trust, have been dissolved and Hillcrest is entitled to act on its own behalf, as a beneficiary of the SCV Trust, to enforce the Contract. The district court rejected this argument because Hillcrest "failed to

present sufficient competent evidence that it was a beneficiary of, or successor entity to, the Horman Family Trusts."[6] To review the correctness of this determination, we first consider the legal argument raised by Hillcrest and then assess whether the evidence it advanced in support of that argument created a material issue of disputed fact with respect to standing. *See Brown v. Division of Water Rights*, 2010 UT 14, ¶ 15, 228 P.3d 747 ("[A] challenge [to standing] is to be evaluated under the standard used for a dispositive motion at the relevant stage of litigation.").

¶22    Generally, it is the trustee's sole duty to enter into and enforce contracts on behalf of a trust for its beneficiaries. *See, e.g., Davis v. Young*, 2008 UT App 246, ¶ 18, 190 P.3d 23 ("A trust is a form of ownership in which the legal title to property is vested in a trustee, who has equitable duties to hold and manage it for the benefit of beneficiaries." (internal quotation marks omitted)). Indeed, rule 17 of the Utah Rules of Civil Procedure provides that an action "shall be prosecuted in the name of the real party in interest," and expressly states that "a trustee of an express trust . . . may sue in that person's name without joining the party for whose benefit the action is brought." Utah R. Civ. P. 17(a). While acknowledging that "Utah substantive law is especially sparse in this area," we have previously concluded that rule 17 allows "the trustee to sue on behalf of the beneficiary" but "does not prevent the beneficiary from suing third parties directly" in all instances. *See Anderson v. Dean Witter Reynolds, Inc.*, 841 P.2d 742, 745 (Utah Ct. App. 1992).

¶23    For example, a "beneficiary has the right to bring an action against a third party when the beneficiary's interests are hostile to those of the trustee." *Id.* at 745. In addition, the Restatement of Trusts explains that "if there is no trustee, the beneficiary can maintain a suit in equity against the third person, if such suit is necessary to protect the interest of the beneficiary."[7] Restatement (Second) of Trusts § 282(3) (1959);[8] *see also*

---

[6]The district court also agreed with UDOT that Hillcrest was required to establish that it was a third-party beneficiary to the Contract to have standing to enforce it against UDOT. However, Hillcrest's argument is that it has standing as a direct beneficiary of the SCV Trust, which was a party to the Contract.

[7]Utah has adopted the Uniform Trust Code which, in its attorney fees provision, refers favorably to the "authority of a beneficiary to bring an action when the trustee fails to take action against a third party" contained in sections 281 and 282 of the

(continued...)

*Anderson*, 841 P.2d at 745 (stating that "most jurisdictions follow the general rule set out in Restatement (Second) of Trusts § 282," but discussing only subsections (1) and (2)). However, the comments to subsection (3) indicate that the beneficiary can sue "[i]f the trustee has ceased to be trustee, as by death, resignation or removal," which suggests that this provision is applicable where the trust itself is still in effect, but there is no trustee. *See* Restatement (Second) of Trusts § 282(3) cmt. g (1959).

¶24　Hillcrest further argues that the trustees liquidated the Horman Trusts and then distributed all of the assets, including the proceeds from its liquidation efforts, to the beneficiaries. Thus, Hillcrest contends that the equitable and beneficial title to all of the Horman Trusts' property, including the Contract rights, have now merged. As a result, Hillcrest contends that the beneficiaries can sue directly to protect their interests in that property.

¶25　"The fundamental nature of a trust is the division of title, with the trustee being the holder of legal title and the beneficiary that of equitable title." *Rawlings v. Rawlings*, 2010 UT 52, ¶ 37, 240 P.3d 754 (citing 76 Am. Jur. 2d *Trusts* § 1 (2005)). However, if "the legal title to the trust property and the entire beneficial interest become united in one person who is not under an incapacity, the trust terminates." Restatement (Second) of Trusts § 341(1) (1959); *see also Rawlings*, 2010 UT 52, ¶ 37 ("In fact, if ever the trustee also becomes the sole beneficiary, all interests in the trust property will reside in the trustee

---

<sup>7</sup>(...continued)
Restatement (Second) of Trusts. *See* Uniform Trust Code § 1004 editors' note; *see also* Utah Code Ann. § 75-7-1004 (Supp. 2012) (Utah's adoption of the Uniform Trust Code attorney fees provision).

　　<sup>8</sup>The Restatement of Trusts provides,
> (1) Where the trustee could maintain an action at law . . . against a third party if the trustee held the property free of trust, the beneficiary cannot maintain a suit in equity . . . except . . . (2) [i]f the trustee improperly refuses or neglects to bring an action . . . [or] (3) [i]f the trustee cannot be subjected to the jurisdiction of the court or if there is no trustee . . . [and] such suit is necessary to protect the interest of the beneficiary.

Restatement (Second) of Trusts § 282 (1959).

and legal and equitable title will merge."). When a beneficiary is in possession of both legal and equitable interests in the property, it can bring an action against a third party. *See* Restatement (Third) of Trusts § 107(2) (2012) ("A beneficiary may maintain a proceeding related to the trust or its property against a third party only if:  (a) the beneficiary is in possession, or entitled to immediate distribution, of the trust property involved . . . ."); *see also 23-25 Bldg. P'ship v. Testa Produce, Inc.*, 886 N.E.2d 1156, 1162 (Ill. App. Ct. 2008) (holding that a land trust beneficiary had standing to enforce a sales contract where the trust had terminated).  *But see Garst Trust v. C.I.R.*, 53 T.C.M. (CCH) 506 (U.S. Tax Court 1987) (mem.) ("[I]n as much as all trust property has been distributed and the trust terminated, [the beneficiary] no longer has an interest in the trust to protect" and therefore "does not have the capacity to litigate on behalf of the trust.").

¶26    Thus, if Hillcrest now holds both the beneficial and legal interests of the SCV Trust in the Contract, it has standing to enforce it against UDOT.  Accordingly, we now proceed to the issue of whether Hillcrest met its burden of setting forth "'by affidavit or other evidence specific facts'" that, if true, would give it standing to pursue the claims against UDOT.  *See Brown v. Division of Water Rights*, 2010 UT 14, ¶ 14, 228 P.3d 747 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

¶27    In addition to relying on the REPC in its opposition to UDOT's summary judgment motion, Hillcrest produced deposition testimony from a manager of Hillcrest (Manager).[9]  Manager indicated that Hillcrest "was formed in the late seventies or early eighties" by Charles H. Horman, his wife, and children.  He stated that the Horman Trusts were "a joint venture of four separate Trusts and the beneficiaries of those trusts."  One of those trusts was the SCV Trust, which included Hillcrest as a beneficiary.  Manager further explained, "The children of Charles H. Horman, they did not have individual ownership in SCV partnership—or SCV Trust.  Their beneficial interest was through Hillcrest Investment Company.  And then Hillcrest . . . their members were the children and . . . Charles Horman . . . and his wife[,] Katherine."  Manager further stated that the Horman Trusts "were Liquidating Trusts and they've now been liquidated and the properties went in different directions."  As part of that liquidation, Manager explained that the Remaining Property was conveyed to Hillcrest.

---

[9]Although Hillcrest provided the testimony of Manager to support its claim that it is a beneficiary of the SCV Trust and that the Horman Trusts had dissolved, the trust documents are not part of the record.

While Manager did not expressly discuss the rights under the Contract with UDOT, it is fair to infer that upon liquidation of the Horman Trusts, the Contract rights were distributed to the same beneficiary who received the Remaining Property, which is the only real property that could be affected by UDOT's failure to construct the frontage road. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (providing that when reviewing the trial court's summary judgment for correctness, the appellate court "views 'the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party.'" (quoting *Higgins v. Salt Lake Cnty.*, 855 P.2d 231, 233 (Utah 1993))).

¶28    During oral argument, UDOT disputed that the Horman Trusts had been liquidated and asked us to take judicial notice of recently filed legal actions involving the trusts.  After argument, pursuant to rule 24(j) of the Utah Rules of Appellate Procedure, UDOT submitted copies of two complaints filed in the Third District Court after the Second District Court issued the summary judgment ruling in this case.[10]  In the first of those complaints, Civil No. 110919972, Hillcrest sued each of the trustees of the Horman Trusts for rescission and breach of contract, based on the ruling by the district court in this action that the Horman Trusts did not convey the Contract rights to Hillcrest.  In the second complaint, Civil No. 110920014, Sidney M. Horman, in his capacity as the trustee of the SCV Trust, a party to the Contract, sued UDOT directly for breach of contract and reformation.  The complaints are relevant to the ultimate determination of whether the Horman Trusts have been liquidated.  However, they are also consistent with Hillcrest's response to UDOT's 24(j) letter, which indicates that the complaints were filed to preserve the claims related to UDOT's failure to construct the frontage road in the event that we affirm the district court's decision that Hillcrest does not have standing to bring the present action.

¶29    Neither the evidence provided by UDOT nor Hillcrest is sufficient to determine definitively whether Hillcrest has standing to proceed.  Rather, there are material questions of disputed fact that must be resolved before we can determine whether Hillcrest has standing and whether we have jurisdiction over the present dispute. "Because summary judgment is inappropriate when there are disputed issues of material fact[,] . . . we . . . must reverse the trial court's grant of summary judgment and

---

[10]Both parties have requested that we take judicial notice of those complaints and, accordingly, we do so.  *See* Utah R. Evid. 201(d) (providing that the court may take judicial notice of an adjudicative fact at any stage of the proceedings).

remand for further proceedings regarding [Hillcrest's] standing."  *See Balentine v. Gehring*, 2007 UT App 226, ¶ 13, 164 P.3d 1269 (citing Utah R. Civ. P. 56(c)).

¶30    Although the district court concluded that Hillcrest did not have standing, it also ruled on the merits of Hillcrest's contract claims.  However, "this ruling was unnecessary" and "was therefore advisory only, and for that reason, we do not review it."  *See Braun v. Nevada Chems., Inc.*, 2010 UT App 188, ¶ 6, 236 P.3d 176 (citing *Summit Water Distrib. Co. v. Summit Cnty.*, 2005 UT 73, ¶ 50, 123 P.3d 437).  If further inquiry on remand determines that Hillcrest does not have standing to pursue the claims against UDOT for failure to build the frontage road, we lack jurisdiction.  *See Brown*, 2010 UT 14, ¶ 12 ("[I]n Utah, as in the federal system, standing is a jurisdictional requirement.").  Under those circumstances, any decision on the merits of Hillcrest's substantive claims here would be unnecessary.  Consequently, we decline to consider the merits of Hillcrest's contract claims until the factual issues relating to its standing, and by extension our jurisdiction, are resolved.[11]  *See In re K.F.*, 2009 UT 4, ¶ 21, 201 P.3d 985 (holding that we must resolve jurisdictional issues before reaching the substantive issues in a case).

---

[11]We also do not consider Hillcrest's motion, raised for the first time on appeal, to join the Horman Trusts as necessary parties under rules 19, 21, and 24 of the Utah Rules of Civil Procedure.  In support of its assertion that it may raise this motion for the first time on appeal, Hillcrest first cites *Cassidy v. Salt Lake County Fire Civil Service Council*, 1999 UT App 65, 976 P.2d 607, which states that "a party may raise the issue of failure to join an *indispensable party* . . . for the first time on appeal."  *See id.* ¶ 9 (emphasis added).  However, Hillcrest does not argue that the Horman Trusts are indispensable, thus meriting the dismissal of its action absent their joinder.  *See* Utah R. Civ. P. 19(b) (stating that if it is not feasible to join a necessary party, the action should be dismissed if the court determines that the absent party is indispensable).  Hillcrest also relies on *Mullaney v. Anderson*, 342 U.S. 415 (1952).  In *Mullaney*, the defendants challenged standing for the first time on appeal and the plaintiffs were allowed to respond by joining additional parties to the appeal.  *See id.* at 416–17.  Here, UDOT challenged standing in the district court, yet Hillcrest did not seek leave to add the Horman Trusts until this appeal.  Under these circumstances, we decline to address this issue.  *See generally State v. Nelson-Waggoner*, 2004 UT 29, ¶ 16, 94 P.3d 186 ("Under ordinary circumstances, we will not consider an issue brought for the first time on appeal unless the trial court committed plain error or exceptional circumstances exist.").

## CONCLUSION

¶31    Hillcrest has presented evidence that creates a question of material fact as to its standing to sue UDOT for breach of the Contract and unjust enrichment. Accordingly, we reverse the district court's summary judgment decision to the extent that it concluded that Hillcrest did not have standing as a matter of law and remand for further proceedings to resolve the genuine issues of material fact necessary to the resolution of that issue. Because the resolution of whether Hillcrest has standing also is determinative of this court's jurisdiction over the matter, we defer consideration of the district court's ruling on Hillcrest's substantive claims.

¶32    Reversed and remanded.


_____
Carolyn B. McHugh,
Presiding Judge


-----


¶33    WE CONCUR:


_____
James Z. Davis, Judge


_____
William A. Thorne Jr., Judge